Robert M. **DEUTSCHMAN**, Appellant,

v.

**BENEFICIAL CORP.,** Finn M.W. Caspersen, Andrew C. Halvorsen. (D.C. Civil No. 86–00595)

No. 87–3570.

United States Court of Appeals, Third Circuit.

Argued Jan. 20, 1988.

Decided March 7, 1988.

Rehearing and Rehearing In Banc Denied April 4, 1988.

Richard B. Dannenberg (argued), Jill Raskin, Lowey, Dannenberg & Knapp, P.C., New York City, Pamela S. Tikellis, Biggs & Battaglia, Wilmington, Del., for appellant, Robert M. Deutschman.

Stephen P. Lamb, Skadden, Arps, Slate, Meagher & Flom, Wilmington, Del., for appellee, Andrew C. Halvorsen.

Charles F. Richards, Jr., Kevin G. Abrams, Richards, Layton & Finger, Wilmington, Del., for appellees, Beneficial Corp. and Finn M.W. Caspersen.

Dewey, Ballantine, Bushby, Palmer & Wood, Sanford M. Litvack (argued), New York City, for appellee, Finn M.W. Caspersen.

Before GIBBONS, Chief Judge, and WEIS and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Chief Judge.

Robert M. Deutschman appeals from a Fed.R.Civ.P. 12(b)(6) dismissal of his amended class action complaint against Beneficial Corporation (Beneficial), Finn M.W. Caspersen, Beneficial's Chairman and Chief Executive Officer, and Andrew C. Halvorsen, its Chief Financial Officer. The two count complaint alleges that the defendants violated (1) section 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a) (1982), and (2) the state common law of negligent misrepresentation. Deutschman, a purchaser of call options on Beneficial stock, seeks to act as a class representative for purchasers of such call options and for purchasers of Beneficial stock. The district court held that the purchaser of a call option lacks standing to sue under the Securities Exchange Act, and is thus not an appropriate class representative for purchasers of Beneficial stock. Because the federal claim was dismissed on standing grounds, the pendent state law claim was dismissed as well. We will reverse.

Since the order appealed from granted a Rule 12(b)(6) motion, we accept as true the factual allegations of Deutschman's amended complaint. Deutschman alleges that in 1986 and part of 1987 Beneficial's insurance division suffered severe losses which had an adverse impact on Beneficial's financial condition; that Caspersen and Halvorsen held stock and stock options in Beneficial which would be adversely affected by a decline in the market price of that stock; that disclosures were made about the losses in Beneficial's insurance division which caused declines in that market price; that in order to prevent further declines Caspersen and Halvorsen, on Beneficial's behalf, issued statements about the problems in the insurance division, which they knew to be false and misleading, to the effect that those problems were

behind it and were covered by sufficient reserves; that these misleading statements placed an artificial floor under the market price of Beneficial stock; that purchasers of Beneficial stock and purchasers of call options in Beneficial stock made purchases at prices which were artificially inflated by the market's reliance on defendants' misstatements, and that both purchasers of Beneficial stock and purchasers of Beneficial call options suffered losses as a consequence. Beneficial stock is traded on the New York Stock Exchange and on other national stock exchanges. Options on Beneficial stock are traded on the Pacific Stock Exchange. The complaint does not allege that Beneficial, Caspersen, or Halvorsen, during the time period complained of, traded in Beneficial stock or in put or call options on Beneficial stock. It alleges that Deutschman suffered losses when, upon disclosure of the facts, call options on Beneficial's stock that he had purchased in reliance on the market price created by defendants' misstatements, became worthless. It does not allege that Deutschman purchased Beneficial stock.

The district court held that option traders who suffered losses as a result of intentional misstatements by the management of a corporation, the stock of which is the subject of those options, lack standing to assert a cause of action for damages under section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5. The court reasoned that in the absence of an allegation that Deutschman bought or sold Beneficial stock, or of an allegation that the defendants bought or sold options, there was no duty owed to him to refrain even from affirmative misstatements which would affect the market price of Beneficial stock.

Put and call options have been a feature of the national financial markets since 1790. Under these contracts a seller agrees to sell or a purchaser agrees to buy a security at a fixed price on or before a fixed date in the future. Such contracts permit investors to hedge against future movements in the market price of securities. Prior to the early 1970's the utility of put and call options was limited because of high transaction costs, and because of the absence of a secondary market for the option contracts. In 1973, the Chicago Board Options Exchange became the first registered exchange for trading in option contracts. Within a short time that exchange had been joined by the American, Philadelphia, Pacific, and Midwest exchanges. By 1985, those exchanges were trading options on over 400 stocks, and the volume of contracts traded exceeded 118.6 million. *See* Green, Stock Option Trading Gains Popularity as Takeovers and Hedging Spur Surge, *Wall St. J.*, July 23, 1986, at 35, col. 1.

The option contract gives its owner the right to buy (call) or sell (put) a fixed number of shares of a specified underlying stock at a given price (the striking price) on or before the expiration date of the contract. For this option a premium is paid, and the contract is worth more or less than the premium depending upon the direction of the market price of the underlying stock relative to the striking price. The market price for options is directly responsive, therefore, to changes in the market price of the underlying stock, and to information affecting that price. *See generally*, Rubenstein, An Economic Evaluation of Organized Option Markets, 2 J. of Comp. Corp.Law and Sec.Reg. 49 (1979).

Because the market value of an option contract is responsive to changes in the market price of the underlying stock, holders of option contracts are susceptible to two separate types of deceptive practices: insider trading and affirmative misrepresentation. Insiders trading on undisclosed material information can injure option holders either by market activity which causes the price of the underlying stock to move, or by market activity directly in the options market. Insiders or others who do not trade in either market can injure option holders by misstating material facts to the public, thereby causing a distortion in the market price of the underlying security, and in the necessarily related market price of the option contract. Only the second type of harm is pleaded by Deutschman:

affirmative misrepresentation by corporate managers having the effect of artificially supporting the market price of the underlying stock, and concomitantly the market price of the option contract for that stock.

■ Section 10(b) prohibits the use "in connection with the purchase or sale of any security ... [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). The relevant SEC rule provides that:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

Rule 10b–5, 17 C.F.R. § 240.10b–5 (1987). The defendants do not deny that the affirmative misrepresentations pleaded by Deutschman would, if proved, amount to untrue statements of material fact which would operate to deceive a purchaser of Beneficial stock. The complaint alleges

that the misrepresentations were made intentionally or with reckless disregard of the truth. It, therefore, satisfies the section 10(b) scienter requirement. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 1381, 47 L.Ed.2d 668 (1976). Thus defendants do not dispute that even though they did not trade in Beneficial stock they could, if Deutschman's allegations are proved, be held liable in a suit by a purchaser of such stock. *See, e.g., Peil v. Speiser*, 806 F.2d 1154 (3d Cir.1986) (stock purchaser can recover damages under section 10(b) for misstatements by corporation and its officers); *Mitchell v. Texas Gulf Sulphur Co.*, 446 F.2d 90 (10th Cir.), *cert. denied*, 404 U.S. 1004, 92 S.Ct. 564, 30 L.Ed.2d 558 (1971) (seller can recover under section 10(b) for loss on sale induced by corporation's misleading press release). Finally, defendants do not dispute that Deutschman is a purchaser of a security. Congress placed that question beyond debate when, in the Act of Oct. 13, 1982, P.L. 97–303, § 2, 96 Stat. 1409, it amended the Securities and Exchange Act of 1934 and other federal statutes so as explicitly to include option contracts.[1] In contrast with the cause of action for sale of unregistered securities under section 11 of the Securities Act of 1933, as amended in the 1934 Securities and Exchange Act, 15 U.S.C. § 77k, "a § 10(b) action can be brought by a purchaser or seller of '*any* security' against '*any* person' who has used '*any* manipulative device or contrivance' in connection with the purchase or sale of a security." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382, 103 S.Ct. 683, 687, 74 L.Ed.2d 548 (1983) (emphasis in original).

1. 15 U.S.C. § 78c(a)(10) currently provides:
The term "security" means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, *any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities*

*exchange relating to foreign currency,* or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing, but shall not include currency or any note, draft bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited. The italicized language was added by Pub.L. 97–303.

The only standing limitation recognized by the Supreme Court with respect to section 10(b) damage actions is the requirement that the plaintiff be a purchaser or seller of a security. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). When in *Manor Drug Stores* the Supreme Court adopted the *Birnbaum* requirement that a section 10(b) plaintiff be a purchaser or seller of a security, however, it expressly recognized that such plaintiffs need not be in any relationship of privity with the defendant charged with misrepresentation. 421 U.S. at 745, 95 S.Ct. at 1930. The underlying purpose of the 1934 Act was the protection of actual participants in the securities markets, and the *Birnbaum* rule was consistent with that purpose because it limited "the class of plaintiffs to those who have at least dealt in the security to which the prospectus, representation, or omission relates." *Id.* at 747, 95 S.Ct. at 1931.

Deutschman's complaint appears, therefore, to satisfy every requirement for a section 10(b) damage action imposed by the Supreme Court when dealing with affirmative misrepresentations which may affect the market price of a security. The district court nevertheless dismissed it. The court acted in reliance on *Chiarella v. United States*, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980), and *Dirks v. Securities & Exchange Comm.*, 463 U.S. 646, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983), construing those cases as limiting exposure to liability for damages under section 10(b) to persons in some special relationship of trust or confidence toward the section 10(b) plaintiff.

■ The district court's reliance on *Chiarella* and *Dirks* is entirely misplaced. Those cases dealt not with injury caused by affirmative misrepresentations which affected the market price of securities, but with the analytically distinct problem of trading on undisclosed information; a theory of recovery which Deutschman does not plead. The "disclose or abstain from trad-

ing" rule laid down in the insider trading cases imposes on insiders a duty to disclose information which need not otherwise be disclosed before they act on that information in any uninformed marketplace. *See, e.g., SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833 (2d Cir.1968), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). Market participants who are neither insiders nor fiduciaries of another type need not disclose material facts, but can rely on the assumption that all other participants have equal access to information. *See General Time Corp. v. Talley Industries, Inc.*, 403 F.2d 159, 164 (2d Cir.1968), *cert. denied*, 393 U.S. 1026, 89 S.Ct. 631, 21 L.Ed.2d 570 (1969). *Chiarella* and *Dirks* involve only the question of when outsiders and nonfiduciaries will be treated as insiders or fiduciaries for purposes of the affirmative duty to disclose or refrain from trading. The court in those cases declined to extend the duty to disclose or abstain to mere tippees who came into possession of otherwise undisclosed information. Nothing in those opinions, however, can be construed to require the existence of a fiduciary relationship between a section 10(b) defendant and the victim of that defendant's affirmative misrepresentation. Except to the extent that other federal statutes may have imposed a disclosure obligation (none are relied on by Deutschman), Beneficial and its officers were free to keep quiet about its business affairs so long as they stayed out of the market. According to Deutschman, however, they chose to speak, and in speaking they were not free to lie.

The district court also relied upon *Laventhall v. General Dynamics Corp.*, 704 F.2d 407 (8th Cir.), *cert. denied*, 464 U.S. 846, 104 S.Ct. 150, 78 L.Ed.2d 140 (1983), a case which we find quite distinguishable. In *Laventhall* no misstatements were made to the public. Instead, the defendant corporation, without disclosure, traded in its own securities after a decision had been made to change its dividend policy. The plaintiff option trader sought to hold the corporation liable for the loss he incurred in the options market because he purchased without knowledge of the impending

change in the dividend policy. The Court of Appeals for the Eighth Circuit held that he could not recover on an insider trading theory of liability absent some transactional nexus between the nondisclosure and the market for options. *Id.* at 412. The reasoning of the *Laventhall* case with respect to insider trading liability has been tellingly criticized. Note, *Private Causes of Action for Option Investors under SEC Rule 10b–5: A Policy, Doctrinal, and Economic Analysis*, 100 Harv.L.Rev. 1959 (1987). We need not address that criticism here, however, for the *Laventhall* holding, like the *Chiarella* and *Dirks* holdings, is simply not relevant to the distinct issue of affirmative misrepresentations affecting a market in securities. No Supreme Court case and no Court of Appeals case has ever imposed a transactional nexus requirement in a section 10(b) affirmative misrepresentation case. *But see Bianco v. Texas Instruments*, 627 F.Supp. 154 (N.D.Ill.1985) (corporation not liable to option trader for affirmative misrepresentation). *Compare In re Digital Equip. Corp. SEC Litig.*, 601 F.Supp. 311 (D.Mass.1984) (corporation liable to option trader for affirmative misrepresentation); *Lloyd v. Industrial Bio–Test Laboratories*, 454 F.Supp. 807 (S.D.N.Y. 1978) (same).

The defendants urge, nevertheless, that policy reasons require that they be insulated from liability to option traders because otherwise there would be no end to their liability. This argument is chimerical. When in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), the Supreme Court adopted the *Birnbaum* rule limiting section 10(b) plaintiffs to purchasers or sellers of securities, it confined section 10(b) liability to members of the precise class for the protection of which the 1934 Act was enacted: participants in the national securities markets. Options traders are participants in those markets. The same degree of protection against unlimited liability to that class as is afforded with respect to other kinds of tortious conduct is also afforded to the defendant by the proximate cause requirement delineated in cases such as *Peil v. Speiser*, 806 F.2d 1154 (3d Cir.1986).

The specter of unlimited liability to persons outside that class was exorcised by the Supreme Court in *Manor Drug Stores.*

Another policy argument advanced by the defendants is that although purchasers of option contracts do purchase securities they are entitled to less protection under the 1934 Act because option trading, like blackjack or craps, is "gambling." By characterizing option traders as "gamblers" the defendants hope that we will draw the conclusion that they are fair game for affirmative misrepresentation, while stock traders are not. We are not persuaded that the difference between trading in the two types of securities should lead to different treatment. Since the price of option contracts is closely dependent upon the price of the underlying stocks, the degree of risk involved in trading in one over the other is not self-evidently greater. The time element of a put or call option does increase exposure to price movements, but the ability to buy or sell such options in the interim does not. Moreover, the availability of option contracts permits traders in common stocks to engage in hedging transactions, which are often used as a means of reducing exposure to market fluctuations and are thus risk reducing. This method of risk reduction, formerly available only through put and call options in an over-the-counter market, has since 1973 been available at lower cost. Finally, it is not our role as a court to pass judgment on the soundness of the legislative policy judgments which led to the creation of exchanges for option contracts, and their treatment as securities. Congress, the Securities and Exchange Commission, the Board of Governors of the Federal Reserve System, and the Commodity Futures Trading Commission all have had a role in the evolution of the market for these securities, and the policy judgment was their responsibility, not ours.

A final point advanced in support of the district court's ruling is that option traders are not entitled under section 10(b) to protection against affirmative misrepresentation because they play no role in capital formation. We are willing to assume, ar-

guendo, that a chief reason for federal regulation of securities markets is that the existence of those markets, post-issue, tends to make capital available to issuers of securities. It is not at all clear to us, however, that the options contract market contributes to liquidity in the post-issue market in a manner significantly different than does the market for stocks, especially when margin trading of stocks is taken into account. Thus we are not willing to construe section 10(b) as inapplicable to option contracts on the basis of speculation about the relationship between option contracts, market liquidity, and capital formation. The legislative policy judgment in this respect is not ours to make.

We hold that Deutschman has standing as a purchaser of an option contract to seek damages under section 10(b) for the affirmative misrepresentations he alleges were made by the defendants, Beneficial, Caspersen, and Halvorsen. The judgment dismissing Deutschman's section 10(b) claim must therefore be reversed. Since Deutschman's pendent state law claim was dismissed only because jurisdiction was predicated on 28 U.S.C. § 1331, the dismissal of that claim must also be reversed.