**Howard GOOD, Plaintiff,**

v.

**ZENITH ELECTRONICS CORPORATION and Jerry K. Pearlman, Defendants.**

No. 89 C 5831.

United States District Court, N.D. Illinois, E.D.

Dec. 12, 1990.

Robert D. Allison, Chicago, Ill., Jules Brody, Mark Levine, Stull, Stull & Brody, New York City, for plaintiff.

Charles W. Douglas, Walter C. Carlson, Constantine L. Trela, Susan A. Stone, Sidley & Austin, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

Plaintiff Howard Good, on behalf of himself and the members of a certified class of purchasers of Zenith common stock, brings this case against defendants Zenith Electronics Corporation ("Zenith") and its chairman, president, and chief executive officer, Jerry Pearlman. Good and plaintiff class claim a violation of the securities laws, 15 U.S.C. § 78j(b) ("§ 10(b)") and 17 C.F.R. § 240.10b–5 ("Rule 10b–5"), as well as common law fraud. Defendants move for summary judgment. For the reasons stated below, their motion is denied with respect to Count I, but granted with respect to Count II.

The uncontested facts in the case are as follows. Zenith's 1988 Annual Report stated that Zenith "expect[ed] further profit improvements in 1989, based on a stable economy and industry volumes at least as strong as 1988." *Statement of Uncontested Facts in Support of Defendants' Summary Judgment Motion* at ¶ 6. On April 25, 1989, Zenith released its 1989 first quarter earnings. Zenith had suffered a $4 million loss, but Mr. Pearlman stated that the loss had been anticipated in the company's forecasts and that Zenith still expected profit improvement for the full year. *Id.* at ¶ 10. Zenith reported its 1989 second quarter earnings on July 21, 1989. The company had suffered a $13 million loss. The loss was attributed to foreign currency positions and reduced profits in Zenith's computer division. Mr. Pearlman stated that, while the company still expected 1989 to be a profitable year, Zenith was "now less confident that the company [would] be more profitable in 1989 than in 1988." *Id.* at ¶ 13. Shortly after the release of the quarterly report, the price of Zenith stock fell.

Plaintiff Howard Good held shares of Zenith during the period April 25, 1989 to July 21, 1989. He represents a class that is defined as all persons (except for defendants and the employees, officers, and directors of Zenith) who bought Zenith common stock between April 25, 1989 and July 21, 1989. Plaintiffs filed suit on July 28, 1989. In the first count of their amended complaint, Good and plaintiff class claim that defendants violated § 10(b) and Rule 10b–5 with their April 25, 1989 statement that Zenith expected profit improvement for the full year. This statement was allegedly false and misleading in that it did not (1) disclose that the forecast was based on the assumption that the dollar would weaken against foreign currency; (2) dis-

close that Zenith had not limited its risk against a rise in the dollar by using foreign currency options; (3) disclose that the company had no reasonable basis to expect profit improvement in its computer division; and (4) disclose that reduced sales, increased inventories, and higher interest expenses existed in the company's personal computer lines. Plaintiffs also allege that the notes regarding forward contracts included in the 1988 annual report were false and misleading. Plaintiffs claim that, as a result of defendants' knowing or reckless statements, the market price of Zenith stock was inflated during the class period. Based on these same allegations, Count II of the complaint contains claims of common law fraud and deceit.

## COUNT I

To establish a claim under § 10(b) and 10b-5, plaintiffs must show that defendants Zenith and Pearlman "(1) made an untrue statement of fact or omitted a material fact that rendered the statements made misleading, (2) in connection with a securities transaction, (3) with the intent to mislead, and (4) which caused plaintiff's loss." *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 943 (7th Cir.1989). In this case, genuine issues of material fact exist with regard to these elements. Summary judgment, therefore, is inappropriate.

■ From the evidence revealed thus far in this case, a jury could find that defendants made untrue or misleading statements in the company's April 25 press release. A forecast, such as the earnings prediction made on April 25, may be the subject of a § 10(b) and Rule 10b-5 claim. "[A]n opinion that has been issued without a genuine belief or reasonable basis is an 'untrue' statement, which, if made knowingly or recklessly, is culpable conduct actionable under § 10(b) and Rule 10b-5." *Eisenberg v. Gagnon*, 766 F.2d 770, 776 (3d Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). Further, a defendant providing an earnings projection may also violate § 10(b) where he "ignor[es] facts seriously undermining the accuracy of the forecast." *Marx v. Comput-*

*er Sciences Corp.*, 507 F.2d 485, 490 (9th Cir.1974).

■ The materials submitted under seal by the parties provide the basis for a finding that defendants may have been in possession of information or had access to information which, by its omission, rendered their statements false or misleading. The undisclosed "bytes" of information plaintiffs enumerate in their complaint may be characterized as being material. Further, plaintiffs have alleged intent. Recklessness in making misrepresentations or omitting material information will satisfy the intent requirement. *Eisenberg*, 766 F.2d at 777.

■ Notwithstanding the nature of the April 25 statement, defendants may have also had a duty to update their statement if additional information became known to the parties that changed the meaning of the statement. "[I]f a corporation voluntarily makes a public statement that is correct when issued, it has a duty to update that statement if it becomes materially misleading in light of subsequent events." *Greenfield v. Heublein, Inc.*, 742 F.2d 751, 758 (3d Cir.1984), *cert. denied*, 469 U.S. 1215, 105 S.Ct. 1189, 84 L.Ed.2d 336 (1985); *Backman v. Polaroid Corp.*, 910 F.2d 10, 17 (1st Cir.1990). While defendants do not quarrel with a duty to update as a legal principle, they do raise a question regarding its timing. Companies enjoy a measure of discretion in scheduling the timing of their earnings disclosures, if disclosure is within SEC requirements. However, a duty to disclose interim information may arise where "sales figures, projections, forecasts and the like ... can be calculated with substantial certainty." *James v. Gerber Products Co.*, 587 F.2d 324, 327 (6th Cir.1978). Defendants argue that they provided an update—the July 21, 1989 quarterly earnings statement. Again, the materials filed under seal show that profit information, both generally and specifically with regard to the computer division, may have been solidified before the July 21 statement and, therefore, should have been disclosed earlier.

■ Defendants further argue a lack of causation or reliance. Reliance may be satisfied in this case under a fraud-on-the-market theory. Under this theory, plaintiffs need only show that they bought Zenith stock relying on the integrity of the price as set by the market and that a misleading statement or omission by defendants resulted in a lower stock price. *Basic Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 990–992, 99 L.Ed.2d 194 (1988); *Flamm v. Eberstadt*, 814 F.2d 1169, 1180 (7th Cir.), *cert. denied*, 484 U.S. 853, 108 S.Ct. 157, 98 L.Ed.2d 112 (1987). As for loss causation, evidence exists that the price of Zenith stock fell some amount when the second quarter earnings were announced in July. Since plaintiff and each member of the certified class, by definition, purchased Zenith stock after the April 25 statement and held stock at the time of the July 21 statement, they would have suffered loss from the decrease in share price.

Plaintiffs have presented information sufficient to allege each of the elements of a § 10(b) and Rule 10b–5 violation. And, plaintiffs raise questions of material fact with regard to the elements. Summary judgment may only be granted where no genuine issues of material fact remain and the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Therefore, defendants' motion for summary judgment with respect to Count I is denied.

### COUNT II

■ Count II is a different story. Based on the undisputed facts and the law, plaintiff cannot satisfy all the elements of a common law fraud claim. Fraud under Illinois law occurs where (1) a defendant makes a false statement of material fact, (2) knowing the statement is false, (3) intending that a plaintiff rely on it, (4) such reliance is justified, and (5) plaintiff thereby sustains damage. *West v. Western Casualty and Surety Co.*, 846 F.2d 387, 393 (7th Cir.1988). Plaintiffs' claim fails in this count because they cannot prove reliance. "Unlike securities fraud litigation, in which reliance is presumed for the entire class of stock purchasers, common law actions for fraud ... require each individual plaintiff to prove that he relied on the alleged misrepresentation." *Katz v. Comdisco, Inc.*, 117 F.R.D. 403, 412 (N.D.Ill.1987). Howard Good did not read Zenith's 1988 Annual Report or the April 25, 1989 press release before purchasing his stock. He may have read Zenith's 1989 first quarter report after purchasing his stock. He does not know if he ever read the 1989 second quarter report. Because Howard Good cannot show that he was aware of the April 25 statement when buying Zenith stock, he cannot establish that he relied on the alleged misrepresentations. In addition, a determination of each class member's reliance, on an individual by individual basis, would be extremely difficult. Therefore, summary judgment is granted with regard to Count II.

Defendants' motion for summary judgment is denied with respect to Count I and granted with respect to Count II.

IT IS SO ORDERED.