Eric MARGOLIS and Dorothy Kas, Plaintiffs,

v.

CATERPILLAR, INC., G.A. Schaefer, D.V. Fites, L.A. Kuchan, and J.W. Kenning, Defendants.

Nos. 90–1238, 90–1242.

United States District Court, C.D. Illinois.

July 22, 1991.

Richard Schiffrin, Schiffrin & Craig Ltd., Buffalo Grove, IL, Martiss Anderson, Goodkind Labaton & Rudoff, New York City, for plaintiff.

Theodore R. Johnson, Caterpillar, Inc., Peoria, IL, Michael D. Torpey, W. Reece Bader, Orrick Herrington & Sutcliffe, San Francisco, CA, for defendants.

## ORDER

MIHM, Chief Judge.

Before the Court are Motions by the Plaintiffs Kas and Margolis to certify a class action (# 26 in Case No. 90–1238 and # 20 in Case No. 90–1242). The Court grants Margolis's Motion to Certify a Class (# 26 in Case No. 90–1238). Kas's Motion to Certify a Class (# 20 in Case No. 90–1242) is granted in part and denied in part.

## JURISDICTION

The Plaintiffs have brought this action pursuant to § 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)), Rule 10b–5 promulgated thereunder (17 C.F.R. § 240.10b–5), and § 20 of the Securities Exchange Act of 1934 (15 U.S.C. § 78t) and state law. This Court has jurisdiction of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa). The Court has jurisdic-

tion over the state fraud and deceit claims based on this Court's pendant jurisdiction.

## BACKGROUND

The actions brought by Margolis and Kas are shareholder class actions brought on behalf of all persons, other than the Defendants, who purchased or otherwise acquired the common stock of Caterpillar during the class period when Caterpillar's stock allegedly lost $11 in two days (20% of its market value) for an allegedly aggregate market loss of over $1 billion upon the disclosure of news that the Plaintiffs assert the Defendants should have released earlier. Margolis has brought a class action for the period between January 19, 1990 and June 26, 1990. Kas has brought a class action for the same period.

The Plaintiffs allege that Caterpillar disclosed the following information and that the disclosure of said information caused the decline in the value of the Caterpillar stock:

... that its plant renovation program had not been proceeding on schedule, thereby increasing costs over and above the expected benefits associated with the program; that its reorganization was also causing the company to experience costly inefficiencies and, contributing to more than half of the expected decrease in Cat's 1990 profits, that its Brazilian earnings, which had previously generated an undisclosed 20% of Cat's profits, was experiencing a dramatic decline due to a significant slow down in the Brazilian economy.

(See Class Action Complaint in *Kas v. Caterpillar*, Case No. 90–1238 and in *Margolis v. Caterpillar*, Case No. 90–1242 at ¶ 1).

The Plaintiffs allege that, during the class period, the Defendants issued a series of false public statements in Caterpillar's press releases, its interviews, its filings with the Securities and Exchange Commission, and in its annual and quarterly reports to the shareholders. The statements were allegedly regarding Caterpillar's finances, business projects, operations, renovation, restructuring, cost savings programs, and overseas operations, including its Brazilian operations, and the contributions to earnings of these operations. The Plaintiffs assert that these statements were materially false and misleading

for failing to disclose material adverse facts. The Plaintiffs contend that the failure to disclose these facts artificially inflated the market price of Caterpillar's common stock throughout the class period until Caterpillar finally made the announcements regarding the problems at Caterpillar.

## DISCUSSION

Plaintiffs who seek to certify a claim for class treatment must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and one of the subsections of Rule 23(b). Rule 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition to satisfying the requirements of Rule 23(a), the Plaintiffs in this action must satisfy the requirements of Rule 23(b)(3). Rule 23(b)(3) requires the Court to find:

That the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy....

The burden is on the Plaintiffs to demonstrate that each of the requirements of Rule 23 have been satisfied. *See, Valentino v. Howlett,* 528 F.2d 975, 978 (7th Cir.1976).

In this case, Caterpillar generally does not oppose the certification of a class by Margolis. However, Caterpillar does assert that the common law claims of fraud should not be certified as to either Margolis or Kas. Further, Caterpillar asserts that the length of the class period should be shortened in both cases.

Regarding Mrs. Kas, who did not sell stock during the class period, but only sold options, Caterpillar argues that she does not have standing to represent a class of shareholders. Further, Caterpillar contends that her lack of knowledge and her refusal to assume the pro rata costs of the litigation make Kas an unfit class representative. Finally, Caterpillar contends that Mrs. Kas cannot prove that she relied on the integrity of the market in making her investment decision; therefore, Caterpillar asserts that there is a unique defense which it can assert against Mrs. Kas which would make her an unfit representative for the class.

### A. Common Law Claims

■ Caterpillar asserts that, with regard to the common law claims, the questions of law and fact common to the members of the proposed classes do not predominate over any questions affecting only individual members and that a class action is not superior to other available methods for the fair and efficient adjudication of these claims under Rule 23(b)(3). This Court agrees. (See record of the oral argument and ruling on the certification of the common law claims at pp. 68–78 of the transcript of the hearing held on April 2, 1991).

■ In deciding whether common issues predominate, the Court considers the substantive elements of the Plaintiffs' cause of action, the proof necessary for the various elements, and the manageability of the trial on these issues. Liability for common law fraud in Illinois requires a showing by each Plaintiff of reasonable and individual reliance upon alleged misrepresentation. *West v. Western Casualty and Surety Company,* 846 F.2d 387, 393 (7th Cir.1988); *Good v. Zenith Electronics Corp.,* 751 F.Supp. 1320, 1323 (N.D.Ill.1990); *Katz v. Comdisco, Inc.,* 117 F.R.D. 403, 412 (N.D.Ill.1987). Illinois law also precludes reliance upon allegedly misleading statements that were made after an investor has purchased stock in order to support a common law fraud claim. *Good,* 751 F.Supp. 1323; *Coe v. Circle Express,* No. 89–C–884, 1990 WL 37260, 1990 U.S. Dist. Lexis 2322 (N.D.Ill., March 5, 1990). Be-

cause the Plaintiffs, common law claims in this action are based upon a series of alleged misstatements or omissions extending over a period in excess of five months, this Court believes that a determination on the individual issues of reliance raised by these claims would probably subsume any common questions.

Moreover, in order to determine the appropriate state common law fraud doctrine the governed claims asserted by a nationwide class of purchasers, the Court would be required to assess whether there was a material conflict between the Illinois standards for common law fraud and the standards employed by each of the states in which the Plaintiffs reside. *See, Phillips Petroleum Company v. Shutts,* 472 U.S. 797, 818, 105 S.Ct. 2965, 2977–78, 86 L.Ed.2d 628 (1985). If the Court were to find that there existed a material conflict between the competing common law fraud standards, it would then be necessary to determine what connection the forum state had with the claims asserted and whether there was a state interest in those claims that was of such significance that the application of Illinois law to the claims of non-residents would not be arbitrary or unfair. *See, Phillips,* 472 U.S. at 816–817, 105 S.Ct. at 2976–77. The choice of law analysis which would be required for the adjudication of the common law fraud claims of a nationwide class of stock purchasers would subsume any common issues raised by these claims.

Therefore, because common issues would not predominate over the questions concerning individual reliance, choice of law and competing state interests, class certification of the Plaintiffs' common law claims is inappropriate. *See, Katz,* 117 F.R.D. at 412.

### B. The Length of the Class Period

■ The Plaintiffs in both cases are attempting to assert a class action for the period between January 19, 1990 and June 26, 1990. Caterpillar asserts that the class period can start no earlier than March of 1990 because the Complaint does not allege any false and misleading misstatements or omissions before that time period. (See, transcript of oral argument held on April 2, 1991 at pp. 76–82).

This Court rejects Caterpillar's arguments. In ¶ 28 of both the Margolis and the Kas Complaint, the allegations state that on January 19, 1990 Caterpillar made misstatements of fact. A ruling by this Court regarding whether these alleged statements, in addition to other statements in the Complaint, were misleading (based upon all the allegations in the Complaint), would in effect be a ruling on the merits of a motion to dismiss for failure to state a claim. As this Court discussed at oral argument, this Court does not believe would be proper to do so at this time.

### C. *Mrs. Kas's Adequacy as a Class Representative*

 Caterpillar asserts that because Mrs. Kas does know much about the details of the litigation that she is an inadequate class representative. This Court rejects this argument because the Plaintiffs need not know all of the ins and outs of a case to be an adequate class representative. *Grossman v. Waste Management*, 100 F.R.D. 781, 790 (N.D.Ill.1984). Generally, plaintiffs are adequate class representatives if they are aware of what the lawsuit is about and are informed of its progress by counsel. *Id.* Rather than the Plaintiff's knowledge of the claim, the critical issue is whether they are committed to the prosecution of the action. *See, Hohmann v. Packard Instrument Company*, 399 F.2d 711, 714 (7th Cir.1968).

In this case, Mrs. Kas is aware of what the lawsuit is about and is informed of its progress through her counsel. Under these circumstances she should be entitled to rely on her attorneys. Although she does not appear to understand all the intricacies of the case, she does appear to understand the general nature of the litigation and, based upon her testimony in her deposition, appears to be committed to the prosecution of the action. Therefore, the Court finds that Mrs. Kas is an adequate class representative. (*See,* oral argument on April 2, 1991 at p. 34).

Caterpillar also asserts that Mrs. Kas is not an adequate representative because she is unwilling to assume the pro rata costs of the litigation. (*See,* transcript of oral argument on April 2, 1991 at pp. 34–44). This Court rejects this argument. The American Bar Association's Model Code of Professional Responsibility is no longer applicable in Illinois. *See, Rand v. Monsanto Company*, 926 F.2d 596, 598 (7th Cir.1991). At present, the American Bar Association's Model Rules of Professional Conduct apply in Illinois. *See, Id.* at 600. As the Seventh Circuit noted in *Rand,* Model Rule 1.8(e) allows a lawyer to pick up the tab for costs if the suit is unsuccessful. Since the Plaintiffs' attorneys have agreed to assume the duty to pay the costs and have submitted an affidavit to that effect, this Court does not believe that it would be proper to refuse to certify this class for that reason.

### D. *Kas's Standing to Assert a Rule 10b–5 Claim*

 Dorothy Kas's Complaint alleges: Kas sold "put" options on the open market during the class period and has been damaged thereby.[1]

(*See* Dorothy Kas's Complaint at ¶ 6).

It is undisputed that the statutory definition of a "security" includes "any put, call, straddle [or] option...." *See,* 15 U.S.C. § 78c(a)(10); *see also, Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 751, 95 S.Ct. 1917, 1932–1933, 44 L.Ed.2d 539 *rehearing denied,* 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 114 (1975). However, since Kas does not allege that she exercised an option and actually bought shares of Caterpillar, Caterpillar asserts that Kas has no standing under § 10(b) or Rule 10b–5 to sue the issuer of the underlying security for allegedly misleading statements. Caterpillar claims that, under these circumstances, there is no fiduciary relationship or obligation between the issuing corporation and the options trader. *See, Chiarella v. United States,* 445 U.S. 222,

---

1. *See,* L. Rosen, *How to Trade Put and Call Options,* at 109 (1974) (a put is an option which gives its owner (the buyer) the right to require the seller (writer) of the put to purchase a particular stock at a fixed price during the option period. The put contract is a negotiable contract, bearing the endorsement of a member firm of the New York Stock Exchange. It is made out in bearer form and can be resold by one person to another).

228–230, 100 S.Ct. 1108, 1114–1116, 63 L.Ed.2d 348 (1980); *see also, Dirks v. Securities Exchange Commission*, 463 U.S. 646, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983).

Only two circuit courts have addressed the issue regarding whether option traders have standing to sue. *See, Data Controls North v. Financial Corp. of America*, 688 F.Supp. 1047 (D.Md.1989), *aff'd without opinion*, 875 F.2d 314 (4th Cir.1989) (affirming dismissal of an option trader's claim); *Deutschman v. Beneficial Corp.*, 841 F.2d 502 (3rd Cir.1988), *cert. denied*, 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1037 (1989) (upholding option trader's standing to sue under Rule 10(b)(5)). Within the Seventh Circuit, only one district court has addressed the option trader issue under Rule 10b–5. *See, Bianco v. Texas Instruments*, 627 F.Supp. 154, 158–161 (N.D.Ill.1985) (dismissing option traders class claim).

The Court in *Data Controls* found that federal courts recognized that option traders had a cause of action under the federal securities laws only in cases where there were claims of affirmative misrepresentations or insider trading. *Data Controls*, 688 F.Supp. at 1049. Because the parties dropped the insider trading charge based upon a stipulation, and the option traders could not show one example of an affirmative misrepresentation on the part of the defendant, the court held that the option traders did not have standing under the federal securities laws. *Id.* at 1049–1050.[2]

In *Deutschman*, a well-reasoned opinion, the Third Circuit held that the purchaser of an option contract had standing to seek damages under the Securities Exchange Act for *affirmative misrepresentations* made by the corporation. *Deutschman*, 841 F.2d at 505–508. As the Third Circuit noted:

> The only standing limitation recognized by the Supreme Court with respect § 10(b) damage action is the requirement that the plaintiff be a purchaser or seller of a security. *See, Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2nd Cir.),

cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952).

> When in *Manor Drug Stores* the Supreme Court adopted the *Birnbaum* requirement that a § 10(b) plaintiff be a purchaser or seller of a security, *however, it expressly recognized that such plaintiffs need not be in any relationship of privity with the defendant charged with the misrepresentation.* 421 U.S. at 745, 95 S.Ct. at 1930. The underlying purpose of the 1934 Act was the protection of actual participants in the securities markets, and the *Birnbaum* rule was consistent with that purpose because it limited "the class of plaintiffs to those who have at least dealt in the security to which the prospectus, representation, or omission relates." *Id.* at 747, 95 S.Ct. at 1931.

*Id.* at 506 (emphasis added).

The Third Circuit then explained why the Supreme Court decisions in *Chiarella* and *Dirks* require a fiduciary relationship or obligation to establish standing. *Id.* The Third Circuit stated:

> Those cases dealt not with injury caused by affirmative misrepresentations which affected the market price of securities, but with the analytically distinct problem of trading on undisclosed information; a theory of recovery which *Deutschman* does not plead.

*Id.*

■ This Court agrees with the reasoning of the Third Circuit in *Deutschman*. In *Chiarella*, the Supreme Court required a showing of a fiduciary relationship between a defendant and the injured party in an insider trading case because the duty to disclose arises from a relationship of trust and confidence between parties to a transaction. *Chiarella*, 445 U.S. at 230, 100 S.Ct. at 1115–1116. The *Chiarella* court did not state that there was a need for a showing of a fiduciary relationship where there were affirmative misrepresentations. As noted by the Third Circuit in the above quotation, the only standing limitation recognized by the Supreme Court in 10(b) damage actions is the requirement that the plaintiff be a purchaser

---

2. The Court's ruling in *Data Controls* rested on the fact that the option traders could not show

either a fiduciary relationship or affirmative misrepresentations.

**1156**

or seller of a security. *Deutschman,* 841 F.2d at 506. It is undisputed in this case that Kas was a purchaser of a security by her purchase of an option.

This Court concludes, with all due respect to Judge Grady, a distinguished jurist, that the holding in *Bianco* is incorrect. In *Bianco,* the district court held that there must be a fiduciary relationship between the issuing corporation and the options trader in order for the options trader to have standing even where there were affirmative misrepresentations. *Bianco,* 627 F.Supp. at 158–161. In fact, the court stated:

> We do not agree that the distinction between affirmative misrepresentation and non-disclosure calls for a different rule as to the standing of option traders to sue under § 10(b). Instead, we read *Chiarella* and its progeny as indicating that there must be some relationship, or some connection between the plaintiffs and the 10(b) defendant. (Citations omitted).

*Id.* at 161.

This Court believes that there is a clear distinction between omissions and affirmative misrepresentations. As the Supreme Court stated in *Chiarella:*

> That the relationship between a corporate insider and the stockholders of his corporation gives rise to a disclosure obligation is not a novel twist of the law. At common law, misrepresentation made for the purpose of inducing reliance upon the false statement is fraudulent. *But one who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so. And the duty to disclose arises when one party has information* "that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them." (Footnote omitted).

*Chiarella,* 445 U.S.. at 227–228, 100 S.Ct. at 1114 (emphasis added).

Where affirmative misrepresentations are alleged, this Court can find no basis in the case law or in the statutory law for the premise that shareholders are to be protected more than option holders. In addition, this Court believes that extending a private cause of action to option holders where there are affirmative misrepresentations furthers the purposes behind Rule 10b–5. *See,* Note, *Private Causes of Action for Option Investors Under SEC Rule 10b–5: A Policy, Doctrinal, and Economic Analysis,* 100 Harvard Law Review, 1959, 1964–1966 (1987).

However, Caterpillar contends that, although Kas has alleged that Caterpillar made statements which were affirmative misrepresentations, the underlying facts alleged by Kas do not support her claim that there were affirmative misrepresentations. Again, this Court believes that Caterpillar is asking this Court to now rule on the merits of Kas's allegations in her Complaint. Such a ruling at this time would not be appropriate.

Thus, this Court concludes that Kas can represent a class of option holders for alleged affirmative misrepresentations by the Defendants. However, since Kas's claim as an option holder is not typical of a stock purchaser's claim, this Court finds that Kas can only represent a class of option holders, not stockholders. (*See,* transcript of hearing held April 22, 1991 at pp. 11–34, 53–54).

### E. *Kas's Reliance on the Integrity of the Market*

■ Caterpillar next asserts that Mrs. Kas is not a proper class representative because she did not rely upon the integrity of the market in making her investment decision; consequently, she would be an inadequate or improper representative of a class on a 10(b)(5) claim (which is a fraud on the market-type claim). (*See,* transcript of hearing on April 2, 1991 at pp. 44–53, 55–68; *see also,* transcript of continued hearing regarding class certification held on May 30, 1991).

■ At the April hearing on class certification, it became clear that Mrs. Kas relied on her husband Irving Kas with respect to her decision to invest in put options on the common stock of Caterpillar. This Court believes that Mrs. Kas is entitled to rely on her husband's advice as an investment advisor as long as her husband relied on the integrity of the market. *See, generally, Grossman v. Waste Management, Inc.,* 589

F.Supp. 395, 403–406 (N.D.Ill.1984) (an investor's reliance on an analyst's recommendation does not totally divorce the investor's decision to purchase from basic reliance on the integrity of the market price of the stock); *see also, In re Data Access Systems Securities Litigation*, 103 F.R.D. 130, 139 (N.N.J. 1984). However, this Court determined that it was unclear from the record whether Mr. Kas had relied on the market, because the Plaintiff's attorneys had directed Mr. Kas not to answer a number of questions which were directly related to his reliance on the market. This Court allowed the Defendants to retake Mr. Kas's deposition at Plaintiff's expense so that Caterpillar would have the opportunity to rebut the presumption of reliance on the market by asking Mr. Kas more questions on this issue.

■ Under the "reliance on the market" theory, a plaintiff's reliance on the integrity of the market is presumed. *See, Basic v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988); *Alexander v. Centrafarm Group*, 124 F.R.D. 178, 184, n. 5 (N.D.Ill.1988). This presumption has been accepted in nearly every circuit which has considered the proposition. *Basic*, 485 U.S. at 247, n. 25, 108 S.Ct. at 991, n. 25.

In this case, Mr. Kas testified in his deposition that he read analyst reports, that he sees quite a few news services, and that he reads the Wall Street Journal. Further, although Mr. Kas's testimony was not unequivocal, it did appear from his testimony that he relied on the fact that the price of Caterpillar stock accurately reflected the true value of the stock.

Caterpillar asserts that Mr. Kas's testimony was inconsistent and that he did not clearly rely on the market. Although, as stated above, Mr. Kas's testimony was not unequivocal, his testimony does tend to show some reliance, and, further, Caterpillar has failed to rebut the presumption of reliance on the market. The Court ordered the parties to retake the deposition of Mr. Kas so that Caterpillar would have an opportunity to ask Mr. Kas the questions that the Plaintiff had earlier ordered Mr. Kas not to answer regarding reliance on the integrity of the market. However, only a few of Caterpillar's questions at Mr. Kas's supplemental deposition were directed toward the issue of reliance on the integrity of the market. Thus, this Court concludes that Caterpillar has failed to rebut the presumption of reliance on the market, and Kas has presented sufficient evidence of reliance on the market to be entitled to rely on the presumption.

■ This Court further finds that interests of sellers of put options and buyers of call options on Caterpillar common stock during the class period are consistent enough for purposes of the adequacy of a seller of put options to represent both the class of buyers of call options and sellers of put options. Further, the Court does not believe that certifying a class of persons consisting of sellers of put options and buyers of call options will create an unreasonable burden in terms of manageability of a class.

## CONCLUSION

The classes in these cases are sufficiently numerous to satisfy Rule 23(a)(1) as thousands of people hold Caterpillar stock and options. The commonality requirement of Rule 23(a)(2) is met with regard to the federal claims as there are questions of law and fact that are common to the classes.

■ Rule 23(a)(3) also requires that the class representatives establish that their claims are typical of the claims or defenses of the class. To met the typicality requirement, the Plaintiffs' claims must have the same essential characteristics as the class at large. *De La Fuente v. Stokely Van Camp*, 713 F.2d 225, 232 (7th Cir.1983). Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small sub-class, then the named plaintiff is not a proper class representative. *Koos v. First National Bank*, 496 F.2d 1162, 1164 (7th Cir.1974). Except where otherwise stated in this opinion, this Court finds that the Plaintiffs' claims are typical of the class claims.

■ The adequacy requirement of Rule 23(a)(4) consists of two components: (1) the absence of a potential conflict between the named plaintiffs and the absent class members; and (2) that the parties' attorneys be qualified, experienced, and generally able to conduct the proposed litigation. *Barkman v.*

*Wabash,* 674 F.Supp. 623, 633 (N.D.Ill.1987). This Court finds that there are no significant potential conflicts between the class representatives and class members and that it is clear that the Plaintiff's attorneys are qualified and experienced.

Finally, this Court concludes that the class questions of fact and law predominate over questions affecting individual claims on the federal claims in this case.

Therefore, based on the foregoing, Eric Margolis is certified to represent a class of those persons who purchased Caterpillar common stock between January 19, 1990 and June 26, 1990. The class shall be for the claims of misrepresentations and omissions in violation of § 10(b) and for claims under § 20(a) of the Securities Exchange Act of 1934.

Dorothy Kas is certified to represent a class of those person who purchased call options or sold put options on Caterpillar common stock between January 19, 1990 and June 26, 1990. The class shall be for claims of affirmative misrepresentations in violation of § 10(b) and for claims under § 20(a) of the Securities Exchange Act of 1934.