**LIONHEART PARTNERS, INC., as General Partner of Lionheart USA Micro Cap Value, L.P., Plaintiff,**

v.

**M–WAVE, INC., a Delaware corporation and Joseph Turek, Defendants.**

No. 95 C 6703.

United States District Court,
N.D. Illinois,
Eastern Division.

April 24, 1996.

Steven Popuch, Swift, Popuch & Sinclair, Chicago, IL, and Michael David Craig, Schiffrin & Craig, Ltd., Buffalo Grove, IL, for plaintiff.

Harold C. Hirshman, Stuart Altschuler and Linda P. Kurtos, Sonnenschein, Nath & Rosenthal, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff, Lionheart Partners, Inc., as General Partner of Lionheart USA Micro Cap Value, L.P., brings this putative class action on behalf of itself and all others similarly situated for damages resulting from alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C.

sect. 78j and 78t, and the rules and regulations promulgated thereunder, including Securities and Exchange Commission ("SEC") Rule 10b–5. The complaint alleges that defendants M–Wave, Inc. ("M–Wave") and Joseph Turek ("Turek"), M–Wave's President, Chief Executive Officer and Chairman of the Board of Directors, issued public statements that were materially false and contained material omissions upon which plaintiffs relied to their detriment. Defendants have now moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), asserting that plaintiff has failed to allege three elements of a *prima facie* case of securities fraud. For the reasons set forth in this opinion, the motion is denied.

## I. *BACKGROUND*

Defendant M–Wave is a leading manufacturer of printed circuit boards used in wireless communications such as cellular phones and direct broadcast satellite television antennas. M–Wave's major customers are leaders in the telecommunications industry, such as Motorola, AT & T and Nokia. Defendant's sales, net income and earnings per share have steadily increased from 1992 through 1994, and at year end 1994 M–Wave common stock traded at approximately $15 per share.

On May 9, 1995, M–Wave announced higher sales and earnings for the company's first quarter, which ended March 31, 1995. On June 8, 1995, M–Wave issued a press release in which defendant Turek reported that M–Wave expected to see more favorable margins during 1995 and had diversified its customer base. After this release, M–Wave's stock traded as high as $18 per share during June and early July 1995.

On July 11, 1995, M–Wave issued another press release, announcing that net income for the second quarter ending June 30, 1995, was expected to be $.22–.25 per share, falling below net income reported for the prior year's second quarter. The stated reason for this reduction was that shipments to Motorola were lower than expected. After this announcement, the market price of M–Wave stock fell approximately $3, to approximately $15 per share.

On August 8, 1995, M–Wave announced its actual second quarter and six months financial results. Net sales were up from the second quarter of 1994, but operating income and earnings per share were lower in comparison to 1994. The report stated that the decrease was due to the July 11 announcement of lower than anticipated shipments to Motorola. In this August 8 press release, Turek was quoted as follows:

> "We previously announced that the lower order level from Motorola would have an impact on quarterly earnings ... Temporary situations like this aren't uncommon, and shipments to Motorola are already back on schedule during the third quarter of 1995."

Following the August 8 statements, M–Wave stock continued to trade at approximately $13 to $15 per share during August, September, and part of October.

On or about August 16, 1995, Turek sold 25,000 shares of his M–Wave stock at $14.40 per share. On October 13, 1995, plaintiff purchased 2000 M–Wave shares at a price of $11.31 per share.

On October 18, 1995, M–Wave announced that third quarter revenues would be 30% below the prior year's third quarter and earnings per share would be zero. M–Wave's management cited reduced orders from key customers and price competition as the reasons for the reduced revenues and earnings. Turek also announced staff reductions at M–Wave's subsidiaries, which were later confirmed in a press release to equal a 20% reduction. In a conference call following the October 18 press release, Turek, in response to questions concerning the August 8 statements, stated:

> In hindsight, that might have been a poor way to describe that statement. We have ... actually when we talked about resuming contracts with Motorola, there was a point there during the quarter where they had actually gone to a zero situation.

Following the October 18 press release, the market price of M–Wave stock fell to approximately $7 per share.

Plaintiff alleges that it purchased shares of the common stock of M–Wave, Inc. on Octo-

ber 13, 1995, in reliance upon defendants' August 8 announcement. Plaintiff further alleges that Turek's statements were materially false and misleading because: (1) shipments to Motorola were not "back on schedule"; (2) reduced orders from Motorola and other key customers were not "temporary"; and (3) Turek failed to state that M–Wave had reduced or intended to reduce its staff because of lower order and shipment volumes. Plaintiffs allege that defendants had knowledge of and/or were reckless in not knowing the falsity of the alleged material misstatements, and, as a result of their reliance on the statements, they acquired the stock at artificially inflated prices. Plaintiff further alleges that it was damaged by the reduction of the stock price resulting from the October 18 press release, which contradicted the statements on August 18.

On November 17, 1995, plaintiff filed this putative class action against defendants, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Defendants have moved to dismiss plaintiff's complaint for failure to state a claim.

## II. DISCUSSION

Motions to dismiss that test the legal sufficiency of a complaint are granted when the plaintiff "can prove no set of facts entitling it to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In reviewing a motion to dismiss, all facts alleged in the complaint and any inferences reasonably drawn therefrom must be viewed in the light most favorable to the plaintiff. *Caldwell v. City of Elwood*, 959 F.2d 670, 671 (7th Cir.1992).

### Securities Fraud

SEC Rule 10b–5, promulgated under section 10(b) of the Securities Exchange Act of 1934, prohibits the making of any untrue statement of material fact or the omission of a material fact that would render statements made misleading in connection with the purchase or sale of any security. 17 C.F.R. sect. 240.10b–5. To state a valid Rule 10b–5 claim, a plaintiff must allege that the defendant, (1) made a misstatement or omission, (2) of material fact, (3) with scienter, (4) in connection with the purchase or sale of securities, (5) upon which the plaintiff relied, and (6) that reliance proximately caused plaintiff's injuries. *Stransky v. Cummins Engine Co.*, 51 F.3d 1329 (7th Cir.1995). Defendants assert that plaintiff fails to allege a misstatement or omission of material fact, scienter, and proximate causation.

### 1. Misstatement or Omission of Material Fact

To establish liability under SEC Rule 10b–5, the plaintiff must prove that in connection with a securities transaction, the defendant either made a false statement of material fact or failed to make a statement of material fact, thereby rendering the statements that were in fact made misleading. *Searls v. Glasser*, 64 F.3d 1061, 1065 (7th Cir.1995). Whether a statement is material depends on how it affects an investor's perception of the security. *Id.* If the court determines that there is a substantial likelihood that disclosure of the information would have been viewed by the reasonable investor to have significantly altered the total mix of information, the statement is material. *Basic, Inc. v. Levinson*, 485 U.S. 224, 231–232, 108 S.Ct. 978, 983–84, 99 L.Ed.2d 194 (1988). Projections and forecasts that are not the type subject to objective verification are rarely actionable under Rule 10b–5. *Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1132 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 883, 127 L.Ed.2d 78 (1994). A defendant providing an earnings projection, however, violates Rule 10b–5 where it "ignores facts seriously undermining the accuracy of the forecast." *Marx v. Computer Sciences Corp.*, 507 F.2d 485, 490 (9th Cir. 1974).

Defendants argue that plaintiff has not alleged that they made a material misrepresentation or omission because the statements made were "merely opinions about the future" or "general predictions" that were not actionable misstatements. Defendants further assert that the alleged misstatements are not actionable because they lacked specificity.

The statement that forms the basis of plaintiff's securities fraud claim is as follows:

We previously announced that the lower order level from Motorola would have an impact on quarterly earnings ... Temporary situations like this aren't uncommon, and shipments to Motorola are already back on schedule during the third quarter of 1995.

Plaintiff's complaint specifically alleges that these statements were false because shipments to Motorola were not "already back on schedule," and the situation was not "temporary." Although the statement "temporary situations...." may be construed as "mere opinion" or "general prediction," the statement that "shipments to Motorola are already back on schedule" is a statement of current, objective fact. At the time the statement was made, shipments to Motorola either were or were not back on schedule, and this information would certainly be within the knowledge of the company's president, who made the statement.

Moreover, even if defendant's characterization of its statements as "predictions" is accurate, the statements may nevertheless be actionable if the defendant was aware of factual information that would undermine their accuracy. *Marx,* 507 F.2d at 490. Plaintiff alleges that defendant made material omissions that would do just that. Plaintiff alleges that Turek's statement omitted the material fact that defendant had reduced or intended to reduce its staff because of lower order and shipment volumes. Taken together, these allegations sufficiently plead the element of the issuance of a misstatement or omission of material fact to state a claim for securities fraud.

### 2. *Scienter*

■ Pleading fraud with specificity is both an element of a Rule 10b–5 claim and a pleading requirement of the Federal Rules. *In Re: Healthcare,* 75 F.3d 276, 280–81 (7th Cir.1995). Rule 9(b) requires that "the circumstances constituting fraud ... be stated with particularity." Fed.R.Civ.P. 9(b). With respect to securities fraud cases, Rule 9(b) requires that the essential element of scienter be pled with a sufficient level of factual support: "the complaint ... must afford a basis for believing that plaintiffs could prove scienter." *In Re: Healthcare,* 75 F.3d at

281, *citing DiLeo v. Ernst & Young,* 901 F.2d 624, 629 (7th Cir.1990), *cert. denied,* 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312. A sufficient level of factual support may be found where the circumstances are pled "in detail." *In Re: Healthcare,* 75 F.3d at 281. "This means the who, what, when, where and how: the first paragraph of any newspaper story." *Id.*

■ Defendants assert that plaintiff's allegations of scienter are conclusory. Defendants support their contention by again relying on its characterization of the alleged misstatements as general predictions and opinions. It is true that under *Healthcare,* cases involving forward-looking statements are treated differently than cases involving statements of objective fact. *Id.* Companies making forward-looking statements are afforded a safe harbor: plaintiffs must allege "specific facts which illustrate that the company's predictions lacked a reasonable basis." *Id.* Although defendants rely primarily on *Healthcare* as the basis for their contention that plaintiff has not pleaded scienter sufficiently, defendants' alleged misstatements differ from those in *Healthcare* in that defendants' statements are not "forward-looking." At least one part of the alleged misstatements, that "shipments *are* already back on schedule" (emphasis added), is an objective assertion of current fact.

Thus, the correct standard by which to assess the adequacy of plaintiff's allegations of scienter is whether the "complaint affords a basis that plaintiff could prove scienter." *DiLeo,* 901 F.2d at 629. Here, the complaint alleges that defendants knew and/or were reckless in not knowing that the statements they made were materially false and misleading. Plaintiff alleges that, contrary to defendants' August 8 statement, shipments to Motorola were not back on schedule. If this is true, it can be inferred that defendants knew that information or were reckless in not knowing it.

■ Moreover, although allegations regarding fraudulent intent or motive are not necessary to state a claim for securities fraud, such allegations may allow the court to infer that the defendant possessed the mental state necessary for a violation. *Healthcare,* 75 F.3d at 283–84. One of the ways to

support an allegation of motive to make a fraudulent statement is to allege that defendant sold or intended to sell stock during the class period. *Id.* Here, plaintiffs have alleged that Turek sold 25,000 shares of his stock on August 16, following the alleged misstatement of August 8. The trier of fact could thus infer that defendant had knowledge of the falsity of his statements at the time they were made, or that defendant came into possession of new knowledge that would render the August 8 statement false. Thus, based on plaintiff's allegations of scienter and of other facts from which scienter may be inferred, plaintiff's complaint sufficiently pleads this element.

### 3. *Loss Causation*

 To establish a cause of action for securities fraud, plaintiff must plead both transaction and loss causation. *Bastian v. Petren Resources,* 892 F.2d 680 (7th Cir.), *cert. denied,* 496 U.S. 906, 110 S.Ct. 2590, 110 L.Ed.2d 270 (1990). "Transaction causation" means that the investor would not have engaged in the transaction had the other party made truthful statements at the time required. *LHLC Corp. v. Cluett, Peabody & Co.,* 842 F.2d 928, 931 (7th Cir.), *cert. denied,* 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 329 (1988). "Loss causation" means that the investor would not have suffered a loss if the facts were what he believed them to be. *Id.* Transaction causation can be shown where the plaintiff purchased stock relying on the integrity of the price as set by the market and that a misleading statement or material omission by defendants resulted in a lower stock price. *Good v. Zenith Electronics Corp.,* 751 F.Supp. 1320, 1323 (N.D.Ill.1990). Loss causation can be shown where evidence exists that the plaintiffs suffered loss from the decrease in share price. *Id.*

 Defendants assert that plaintiff pleads only transaction causation and not loss causation. They support this contention by implying that plaintiff must allege that the entire market decrease on October 18 occurred because Motorola orders were not "back on schedule," as the alleged misstatement of August 8 had asserted. Defendants further assert that plaintiff was on notice that the stock was trending downward after the alleged misstatements because it did not

purchase the stock until almost two months after the alleged misstatements. Although it is true that the significant period of time between the statements and the purchase of the stock presents questions of reliance, this fact does not impair the adequacy under Rule 12(b)(6) of plaintiff's allegations of loss causation.

Plaintiff alleges that it purchased stock in reliance upon the August 8 statement, that the price of the stock was inflated because of the alleged misstatements and/or nondisclosure, and that, on October 18, public statements were issued by defendants that contradicted the alleged misstatements and led to a 40% decline in the market price of the stock. These claims sufficiently allege that plaintiff suffered a loss as a result of the alleged misstatements. Thus, plaintiff has adequately alleged loss causation.

### III. *CONCLUSION*

For the reasons set forth above, defendant's motion to dismiss is denied. This matter is set for a status report on May 21, 1996, at 9:00 a.m., at which time the parties should be prepared to discuss a discovery schedule and the procedure for determining expeditiously whether this case will proceed as a class action.