**VAN–S–AVIATION, Plaintiff,**

v.

**PIPER AIRCRAFT CORPORATION, et al., Defendants.**

M.D.L. No. 217.
No. 73CV614–W–B–6.

United States District Court, W.D. Missouri, W.D.

May 22, 1984.

---

Edward A. McConwell, Overland Park, Kan., and John Harl Campbell, Kansas City, Mo., for plaintiff.

John T. Martin and William G. Zimmerman, Shook, Hardy & Bacon, Kansas City, Mo., for all defendants.

R. Lawrence Ward, Kansas City, Mo., for defendant Gregory.

## MEMORANDUM AND ORDER DENYING CLASS CERTIFICATION

SACHS, District Judge.

This litigation, now entering its second decade, has recently been transferred to me. The allegations of the second amended complaint thrust in several directions, but the general tenor is of unfair competition through price discrimination between aircraft distributors (wholesalers) and retail dealers. It is contended that the distributors actually sold and sell direct to the public, using "captive" dealers and other procedures, and have enjoyed and still enjoy a competitive advantage over independent dealers.

The immediate issue is one of class certification under Rule 23, F.R.Civ.Proc. The late Judge Gorbey in this case and the late Judge Mehrtens, in separate litigation brought by the same plaintiff, denied certification of a nation-wide class of dealers in Piper aircraft. Judge Gorbey also denied certification of a geographically narrower class. The most fully stated pertinent reasoning appears in Judge Gorbey's "Class 'B'" ruling. *In re Piper Aircraft Distribution System Antitrust Litigation,* 23 Fed.R.Serv.2d 282 (W.D.Mo.1976).

Judge Gorbey's denial of certification of a nation-wide class was based on a theory of collateral estoppel reliance on Judge Mehrtens' ruling. *Van-S Aviation Corp. v. Louisiana Aircraft, Inc.,* 1976–1 Trade Cas. 60,759 (S.D.Fla.1974). The Gorbey decision was reversed by the Eighth Circuit. *In re Piper Aircraft Distribution System Antitrust Litigation,* 551 F.2d 213 (8th Cir.1977). The case was remanded to this court for further consideration of the class issue on the basis of an independent record.

I read the Eighth Circuit opinion as being somewhat skeptical of the Florida ruling, because of the speed with which it was reached. Plaintiff has now had more than enough time to prepare. The most recent hearing in this case was held in December, 1983, and the parties filed briefs and other necessary materials as recently as May 4, 1984.

There are serious questions concerning the various elements of class certification. Some 500 dealers would allegedly be involved, but only one former dealer ("Van-S") has indicated any interest in litigating. The Van-S corporation terminated its relationship with Piper in 1971, two years into the relevant period, which goes back to 1969. Van-S sold one Piper airplane during the period. The corporation presumably might claim damages from a projection of loss of sales it might have made during the two-year period rather than under a theory of reduced profits on the one airplane. It is the theory of plaintiff's economic expert that there is a national market for Piper airplanes that does not readily break down into smaller geographic units. It appears to be his theory that *all* independent dealers necessarily lost trade or profits on sales because some distributors allegedly sold directly or indirectly at retail, at depressed prices, in competition with such dealers.

Numerosity and typicality will be assumed, at least for the damage period 1969–1971. Typicality of the Van-S claim would not extend into the current period, however, more than a dozen years later. Injunctive relief is sought on behalf of dealers who may still be part of Piper's distribution system. Van-S has no interest in injunctive relief, and little interest in pursuing damages after 1971. Even for 1969–71, defendants vigorously contest whether common questions of law and fact predominate, as to possible damage claims of dealers other than plaintiff. But Van-S will present an economic theory under which common issues would predominate. The soundness of that theory will not be explored, as that would anticipate a ruling

on the merits. A ruling touching the merits would also likely impinge on the responsibilities of Judge Ross T. Roberts of this court, who is presently in trial in class action litigation involving another manufacturer, Cessna. Van-S treats this as companion litigation. Plaintiffs' lead counsel in the Cessna litigation is also lead counsel here.[1]

The dispositive issue at this point is adequacy of representation under Rule 23(a)(4) from the standpoint of ability and willingness to finance a nation-wide class action of considerable complexity. Preparation for many weeks of trial time is in prospect if the Cessna litigation is a model. After a hearing in September, 1976, Judge Gorbey ruled that plaintiff Van-S had failed to establish the necessary commitment and ability to effectively prosecute the Class "B" proceeding, in which there were some 30 members of the class. It logically follows that adequacy has not been established, absent a much stronger record, for class litigation of a broader range, involving some 500 members.

Van-S has not strengthened the record made in September, 1976. On the contrary, all counsel have been content to rely essentially on the same record. Judge Gorbey's review of the facts and the applicable law, 23 Fed.R.Serv.2d at 287, needs little elaboration. I agree with Judge Gorbey's evaluation of essentially the same record and find no change of legal direction since 1976 that would favor class certification.

R.L. Van Sickle, president of the Van-S corporation, testified that he had obligated his corporation to pay any "court costs." Tr., hearing of Sept. 23, 1976, page 56 (hereinafter "Tr."). Van Sickle committed himself personally "to supplement any deficiencies that the corporation might have in cash to handle" such court costs. Tr. 56–7. When Van Sickle was asked about the more comprehensive expenses of litigation, he was interrupted by his co-counsel (no longer in the case) who asserted it was sufficient to pay for notices for the class action and that it was improper to inquire as to "what his over-all obligations may be with regard to expenses." Tr. 62. Van Sickle thereafter did testify generally that he would pay the cost of litigation (Tr. 63) but his attorney asserted that transportation costs would be "my expenses." Tr. 64. No written agreement is in the record or has been submitted for my inspection.

Van Sickle had been lending money to Van-S in 1976. The corporation had recently suffered small operating losses. Tr. 71.[2] In apparent recognition of corporate financial weakness, Van Sickle had made an individual commitment to pay the expenses of counsel in prosecuting the litigation. Tr. 82. He testified generally that he could "cover the expenses." Tr. 83. It is not clear whether he contemplated an obligation of several thousand dollars or is prepared to pay "big money."

Judge Gorbey ruled from the bench, on this thin record, that "although the president of Van-S Aviation Corporation has indicated a willingness and an ability to finance this lawsuit on behalf of a class, the plaintiff Van-S-Aviation Corporation has not shown that it is capable of financing a lawsuit on behalf of a class, thereby fairly and adequately representing the interests of the requested class." Tr. 91–2. In his formal written opinion, he observed that "the nature and extent of Van-S' or Mr. Van Sickle's commitment or ability to

1. Minnesota counsel have, however, participated as co-counsel in the Cessna case. Co-counsel in this case are Kansas City attorneys. None of the counsel in this case are affiliated with large law firms. In addition to financing, which is the direct focus of this ruling, I have concern about the adequacy of support staff that counsel can make available for heavy and constant duty in this case. According to a current legal directory, the two firms have a total of one associate.

2. No current financial information is supplied by Van-S or by Van Sickle. The corporation recently suffered a charter forfeiture for non-compliance with periodic requirements of Indiana law. This has been remedied, but does not generate any confidence in the ability of the corporation to finance national class action litigation or the personal commitment of Van Sickle to meet his corporate obligations.

pay ... expenses of litigation is not clear." 23 Fed.R.Serv.2d at 287. The corporate finances were not disclosed, "nor was any evidence of Mr. Van Sickle's financial status presented." *Id.* The deficiencies in proof have not been remedied, although plaintiff had every incentive to do so, if a more favorable record could have been presented.

I recognize that in class action proceedings financial commitment and ability are sometimes not in controversy, and very little record is made. Where, as here, the issue is in serious question, however, it will not do for a class representative to rest on unconvincing generalities and ambiguous remarks.

Even if I were not inclined to give deference to rulings by a former judge in the same case on the same record, the weight of authority, particularly among district judges in the Eighth Circuit, appears to be with Judge Gorbey.[3] *Ralston v. Volkswagenwerk, A.G.,* 61 F.R.D. 427, 433–4 (W.D.Mo.1973) (Urbom, J., sitting by designation); *Hurwitz v. R.B. Jones Corp.,* 76 F.R.D. 149, 165 (W.D.Mo.1977) (Hunter, J., after reviewing financial statements in camera); *McElhaney v. Eli Lilly & Co.,* 93 F.R.D. 875, 879 (So.Dak.1982) (Porter, J., quoting *Ralston* ). The only case in this circuit where the ruling is arguably to the contrary is *In re McDonnell Douglas Corp. Securities Litigation,* 92 F.R.D. 761 (E.D.Mo.1981). In that case Judge Hungate noted, however, that Judge Meredith, in an unreported decision, followed the *Ralston* rationale. Judge Hungate observed in his case that the participating law firms (with some 40–50 lawyers) had agreed to bear the expenses of litigation initially, and the question of adequacy of financial backing would be reconsidered if less than vigorous prosecution were noted. The ruling seems based on a perception of financial and staff commitment by the law firms that is not present here.

**3.** There are no controlling appellate decisions.

**4.** It is possible that plaintiff hopes that group support may develop if the Cessna litigation

■ Any conflict in the case law elsewhere may be more apparent than real. When a court has meaningful assurance that adequate financing is available, either directly from the client or from a supporting group or (within ethical limits) from counsel, that aspect of adequacy of representation will be accepted. *See, e.g., Wolkenstein v. Reville,* 539 F.Supp. 87 (W.D.N.Y.1982); *Brame v. Ray Bills Finance Corp.,* 85 F.R.D. 568 (N.D.N.Y.1979) (legal aid society financing of litigation for indigents is ethically proper even if reimbursement in the event of a loss may not be realistically anticipated, because the attorneys do not personally fund the expenses of litigation.)

I am mindful that one of the major advantages of class action procedure is that it may enable litigation of multiple claims that cannot, with financial feasibility, be prosecuted for the benefit of one individual. Other procedures such as joinder and multi-district litigation may enable effective pooling of resources. But Rule 23(a)(4) requires the court to be satisfied that the necessary money and staffing will be made available from *some* source. In the absence of such a showing by the proponent of the class action, the court cannot, under the rules, be a party to misleading prospective class members into supposing that thorough and vigorous pretrial and trial preparation is assured.

In the present case, the burden of satisfying the court has not been met. I have no basis for a conviction that Mr. Van Sickle was or is prepared to spend large sums to prepare this case adequately. Group support is presently nonexistent. Counsel's commitment to expend large cash sums here, in addition to the time and money that may have been advanced in the Cessna litigation, is ·not shown. No resources have been disclosed in camera. The only reasonable conclusions are adverse to plaintiff.[4]

breaks favorably. On the hypothesis that the Cessna case may not develop favorably, plaintiff should be freed of the class action albatross. If a favorable development occurs, and a financ-

For the reasons stated, certification of a national class action will be DENIED.

Counsel for the parties are further ORDERED to prepare and file within 30 days a discovery plan for completion of discovery and trial of this case no later than next winter. Counsel may propose one or more agreed trial dates.

ing group or legal "angel" does appear, a renewed effort to obtain certification might, if deemed timely, be entertained here or in one of

the other districts in which litigation was filed and then transferred here for multi-district discovery.