**Samuel WEBER, etc., Plaintiff,**

v.

**Jerome GOODMAN, et alia, Defendants.**

**No. CV–97–1376 (CPS).**

United States District Court, E.D. New York.

April 20, 1998.

---

## MEMORANDUM AND ORDER

SIFTON, Chief Judge.

Plaintiff Samuel Weber brings this action pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* Plaintiff moves to certify this case as a class action. Defendants Simon & Schuster, Inc. and Viacom, Inc. (together, the "S & S defendants") as well as defendant North Shore Agency ("NSA") and its principal officer and equity owner, defendant Jerome Goodman, oppose class certification.

For the reasons stated below, plaintiff's motion for class certification is denied.

## BACKGROUND

The following facts are drawn from the amended complaint and are taken as true for purposes of this motion. Plaintiff received a letter dated December 18, 1996, regarding an alleged overdue bill for books purchased from the Center for Applied Research, an imprint of Simon & Schuster. The December 18, 1996 letter contained the following language and format on the front of the notice:

---

| **EARLY WARNING NOTICE** |

Dear Samuel Weber,

Our client, CENTER FOR APPLIED RES, requires that we send you this early warning notice to verify that payment has not yet been received for the items listed below:

HW REACH ADD/ADHD CHLDRN $34.55
PARENTS CMPLT SPEC ED GD $24.66

Take advantage of this early warning notice by mailing a check in the envelope provided. Give this early warning notice your immediate attention. Full payment is expected. This is an attempt to collect a debt and any information obtained will be used for that purpose.

NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION

The back of the notice appears as follows:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. if you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor. This is an attempt to collect a debt and any information obtained will be used for that purpose.

NOTE: "Parents may not have any legal obligations for their children's purchases. If you have any questions about you obligation to pay this bill, we suggest you seek legal advice."

**OFFICE HOURS: 9 A.M. - 4:30 P.M. MONDAY - FRIDAY EST**
PLEASE FOLLOW THE PROCEDURES BELOW
1. MAKE OUT CHECK OR MONEY ORDER FOR FULL AMOUNT SHOWN.
2. ENCLOSE YOUR PAYMENT AND BOTTOM SECTION OF LETTER IN RETURN ENVELOPE.
3. IMPORTANT: PLEASE PUT ACCOUNT NUMBER ON ALL CHECKS AND CORRESPONDENCE.
4. MAIL IT!

The letter was printed on North Shore Agency letterhead and appeared to have been sent by the North Shore Agency. Thousands of similar letters were sent to other S & S customers.

Despite the letter's appearance, plaintiff alleges that the North Shore Agency did not prepare or mail the December 18, 1996 letter.[1] Rather plaintiff believes that the letter was sent by Simon & Schuster. While the North Shore Agency allegedly authorized the S & S defendants' use of its name and letterhead, the North Shore Agency was, according to plaintiff, not meaningfully involved in

1. The address listed on the December 18, 1996 letter is similar to that of a letter from Simon & Schuster's customer service department but has a different post office box number. The S & S defendants state that this box belongs to its billing and accounts receivable contractor.

collecting debts owed to the Sprint defendants.

In count one of the second amended complaint, plaintiff alleges that the S & S defendants are liable under 15 U.S.C. § 1692e and that NSA and Jerome Goodman are liable under 15 U.S.C. § 1692j because the December 18, 1996 letter conveys the false impression that it was sent by a collection agency that was meaningfully involved in collecting the debt. Plaintiff seeks the maximum amount of statutory damages allowed under 15 U.S.C. § 1692k, to be distributed on a cy pres basis if appropriate, and attorneys fees and litigation costs.

In count two of the second amended complaint, plaintiff asserts that defendants violated section 349 of the New York General Business Law. Plaintiff alleges that the December 18, 1996 letter conveys the false impression that it was sent by a collection agency that was meaningfully involved in collecting the debt. Plaintiff seeks a declaration that defendants' collection letters are unlawful, an injunction prohibiting defendants from sending or causing or permitting to be sent to consumers collection demands falsely purporting to emanate from a debt collector, and attorneys fees and litigation costs.

## DISCUSSION

### Class Certification

Plaintiff moves to continue this action on behalf of the following classes: "All persons who satisfy the following criteria: All consumers who i) were sent documents by Viacom, Inc. and/or Simon & Schuster, Inc. purporting to emanate from North Shore Agency ii) which letters were not returned by the Postal Service." For the purposes of Count I, the class included anyone who was sent the collection demands on or after March 21, 1996.

Federal Rule of Civil Procedure 23(a) sets forth the requirements for class certification:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) these are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Additionally, the class sought must meet one of the descriptions found in Federal Rule of Civil Procedure 23(b) of which subsection (3) permits class certification if "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The party seeking certification has the burden of demonstrating that all of the criteria are met. *Bishop v. New York City Dep't of Hous. Preservation & Dev.*, 141 F.R.D. 229 (S.D.N.Y.1992). Courts must accept the complaint's allegations as true and should avoid a preliminary inquiry into the merits of the case. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). While class certification motions may be subject to resolution based on the pleadings, at times, it is necessary "to probe behind the pleadings before coming to rest on the certification question." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Class certification should be granted if the court "is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 161, 102 S.Ct. 2364. A class may be decertified if later events demonstrate that the reasons for granting class certification no longer exist or never existed. *Id.* at 160, 102 S.Ct. 2364.

Plaintiff argues that his proposed class meets all four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—as well as the additional requirements of Rule 23(b)(3)—predominance of common questions of law or fact and superiority of the class action over other forms of adjudication. Defendants appear to concede that the numerosity requirement is met because approximately 420,000 letters similar to the December 18, 1996 letter were

sent. *See* Ex. B at 21 (Defs.' Resp. to First Set of Interr.); Decl. of William J. Hoffman, attorney for the S & S defendants. Defendants' challenges to the commonality of the claims, typicality of claims and defenses, the predominance of the common aspects of the claims, the superiority of the class action form, and the adequacy of plaintiff's representation are addressed below.

### Commonality & Predominance

■■■■ Count One of this action is based on the FDCPA which regulates the collection of consumer debts defined as those debts incurred "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). A creditor violates section 1692e of the FDCPA, prohibiting "any false, deceptive, or misleading representation or means in connection with the collection of any [consumer] debt," if the creditor creates the misleading impression in the least sophisticated consumer that a third party is collecting a debt for the creditor when that third party is not meaningfully involved in the collection process.[2] *Clomon v. Jackson,* 988 F.2d 1314, 1319 (2d Cir.1993). An outside company violates section 1692j(a) of the FDCPA if it has assisted the creditor in deceiving the least sophisticated consumer by designing, compiling, or furnishing "any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating." 15 U.S.C. § 1692j(a). The "least sophisticated consumer" standard is an objective one designed to protect those most in need of protection. *Clomon,* 988 F.2d at 1319.

Plaintiff alleges that the December 18, 1996 letter violated the FDCPA. Plaintiff alleges that the form and content of the December 18, 1996 letter led the least sophisticated consumer to believe that the North Shore Agency was collecting the debt when, in fact, the North Shore Agency was not meaningfully involved, in violation of 15 U.S.C. §§ 1692e, 1692j.

Plaintiff seeks to pursue this case as a class action due to his belief that the December 18, 1996 letter he received was a form letter sent to many individuals who had unpaid bills for books and similar products. Plaintiff argues that there are a number of common questions of fact and law that predominate over individual questions. Particularly, the finder of fact would examine the form letter and determine whether the letter in question conveys the impression to an unsophisticated consumer that a collection agency is involved in the collection of the debt. The finder of fact then would examine the relationship between the defendants and determine: (1) the responsibility of Simon & Schuster for sending the letter; (2) the responsibility of Viacom for sending the letter; and (3) whether NSA had any meaningful involvement in the sending of the letter.

Plaintiff contends that the only non-common issue is the identification of each consumer sent the form letter. This identification, plaintiff argues, can be accomplished through the ministerial act of searching defendants' records for those customers.

Defendants disagree. Defendants argue that some of plaintiff's proposed "common" questions are actually highly individualized inquiries. Defendants argue that three of the above listed issues involve the question of who actually sent the letters at issue.[3] Thus, defendants argue, plaintiff's theory implicates all actions that NSA takes with respect to the collection of a particular debt. Defendants argue that NSA's involvement varies from debtor to debtor.

---

2. Those who originally extended the credit to the consumer are generally exempted from FDCPA regulation. However, a creditor who "in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts" is liable under the FDCPA. 15 U.S.C. § 1692a(6).

3. Defendants argue that as a result of discovery plaintiff no longer maintains that the S & S defendants sent the letters and thus the only common issue is whether the letter in question conveys that a collection agency is meaningfully involved in collecting the purported debt. Defendants' position appears to rest on their responses to interrogatories.

Plaintiff does not confront defendants' assertion that the accounts of some individuals who received the form letter were assigned at some point in time to the North Shore Agency for meaningful debt collection. Rather, plaintiff argues that it is looking at NSA's involvement in sending the "first" letter to plaintiff and class members. Under plaintiff's version of events, no individualized inquiry is necessary to determine defendants' involvement with sending the "first" letter.

Given the pleadings and the information currently before this Court, plaintiff has demonstrated that the letter sent to him was a mass-produced form letter. The defendants affirm that 420,000 similar letters were sent to customers in the year immediately proceeding the filing of the complaint in this case. *See* Ex. B to Hoffman Decl. Given the number of letters sent, it is unlikely that the customers receiving the "first" letter were subject to distinctive treatment. Rather, all accounts fitting a certain description likely were grouped together for identical processing. Therefore, the question of defendants' involvement with the "first" letter to each class member does not require an individualized inquiry into the details of each potential class member's account and the common question predominate over the individualized questions that remain.

### Superiority of Class Action

In order for a class action to be maintained under Federal Rule of Civil Procedure 23(b)(3), the class action form must be superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.Pro. 23(b)(3).

Plaintiff argues that the class action form is the superior method for adjudicating this controversy. Plaintiff asserts that this case is an example of consumer litigation for which the class action form is particularly apt. The injured consumers rarely bring an individual action for numerous reasons. The consumers lack the finances to bring a lawsuit, and such a lawsuit would not be economically feasible given the small awards involved in an individual action. Additionally, many consumers remain unaware of violations of their rights and, therefore, do not consider the option of suing.

Defendants argue that the class action form is not the best way to adjudicate this case. Defendants contend that plaintiff's lawyers will be the only ones to gain any benefit from the suit. Plaintiff's counsel will receive large fees after subjecting defendants to heavy administrative costs and after securing only small recoveries for the class members. The FDCPA caps damages in individual cases to the actual damages suffered by plaintiff plus up to $1,000 in statutory damages. 15 U.S.C. § 1692k(a)(1)–(2)(A). By contrast, the FDCPA caps class-action damages to the actual damages suffered by the class members plus the lessor of $500,-000 or one percent of the defendant's net worth. 15 U.S.C. § 1692k(a)(2)(B)(ii). Because of the defendants' probable net worth, the maximum statutory damages in this class action are $500,000.[4] Since plaintiff's counsel asserts that no class member suffered pecuniary harm,[5] the 420,000 potential class members in this case will have a maximum recovery of under $2—substantially less than the damages available in individual suits. Citing cases, defendants conclude that, when the class members are likely to recover such a small amount, class certification is not appropriate.

---

**4.** Defendants have not submitted affidavits of net worth, but this court assumes for purposes of this motion that 1% of their net worth would be greater than $500,000.

**5.** How plaintiff's counsel knows this, even before it has identified potential class members, is unclear.

It is well established that class actions are often the superior form of adjudication when the claims of the individual class members are small. *Korn v. Franchard Corp.*, 456 F.2d 1206, 1214 (2d Cir.1972) (quoting 3 Moore, Federal Practice 23.45[3] ). The Advisory Committee Notes for the 1966 revision of Rule 23 explained:

> The interest of individuals in conducting separate lawsuits may be so strong as to call for denial of a class action. On the other hand, these interest may be theoretic rather than practical; ... the amounts at stake for individuals may be so small that separate suits would be impracticable.

Accordingly, the dominant concern of the drafters of Rule 23(b)(3) was the "vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" *Amchem Products, Inc.*, —— U.S. at ——, 117 S.Ct. at 2246 (quoting Advisory Committee Notes).

 Here, aside from plaintiff, no individual who received the form letter has attempted to sue defendants for their alleged violation of the FDCPA. The small damage awards available to individual plaintiffs under the FDCPA are a likely factor in the lack of individual lawsuits. Therefore, this case appears to fit easily within the above described and accepted category of cases in which a class action is the superior method of adjudicating the controversy. *See Rivera v. Fair Chevrolet Geo Partnership*, 165 F.R.D. 361, 366 (D.Conn.1996). Yet defendants disagree asserting that the benefits to the members of this proposed class action are so minimal that the proposed class members are better off filing individual actions.

Defendants' argument is based on earlier district court cases that expressed concern over certifying a class action if the potential recovery for each class member was so small that only plaintiffs' counsel would benefit from class certification. *Kohlenbrener v. Dickinson*, 1996 WL 131736 at *2 (N.D.Ill. Mar.15, 1996); *Mace v. Van Ru Credit Corp.*, 1995 WL 549088 at *13–14 (N.D.Ill. Sept.11, 1995), *vacated on other grounds*, 109 F.3d 338 (7th Cir.1997); *Parker v. George Thompson Ford, Inc.*, 83 F.R.D. 378 (N.D.Ga.1979);

*Free World Foreign Cars, Inc. v. Alfa Romeo, S.p.A.*, 55 F.R.D. 26 (S.D.N.Y.1972).

I note that the Kolenbrener case involved defendants with negative net worth, thus presenting a factual situation far different than defendants here. 1996 WL 131736 at *2. In addition, while the Seventh Circuit vacated the Mace opinion on other grounds, the court explicitly stated I

> [A] de minimis recovery should not automatically bar a class action. The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights....

True, the FDCPA allows for individual recoveries of up to $1000. But this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case. These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing FDCPA's objectives.

*Mace v. Van Ru Credit Corporation*, 109 F.3d 338, 344 (7th Cir.1997).

The Southern District of New York case cited above is based on the Second Circuit case of *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir.1968). In *Eisen*, Second Circuit stated:

> Bearing in mind the desirability of providing small claimants with a forum in which to seek redress for alleged large scale ... violations, we are still reluctant to permit actions to proceed where they are not likely to benefit anyone but the lawyers who bring them. Concededly, the damages for individual class members will be small and the possibility remains that the amount expended on the paper work which would be necessary in order to file and prove a claim may exceed the amount of damages sustained.

*Eisen*, 391 F.2d at 567.

The concern raised by *Eisen* merits noting in this case due to the low awards available to the proposed class members. However,

logic and common sense dictate that this concern should not necessarily preclude class treatment in this case. If applied, defendants' argument means that, if defendants had sent fewer allegedly unlawful letters, the class action form would be appropriate because the class members might be able to recover more damages. Since defendants sent out so many allegedly unlawful letters, the class action form is inappropriate because defendants' vast improper conduct successfully diluted any one class member's recovery.

Hinging the appropriateness of the class action form to the number of improper letters sent is inappropriate in this case because, no matter the number of letters, it is unlikely that any proposed class member will bring an individual action against defendants for their alleged violations of the FDCPA. The class action form is the only way to ensure defendants' compliance with the FDCPA on this point. Each class member has a stake in vindicating his rights, and the public has an interest in seeing that the FDCPA is obeyed. Accordingly, the class action form is the superior method of adjudicating this case.

### Adequacy of Representation

■ In order to maintain a class action, plaintiff must demonstrate that the interests of the class will be fairly and adequately protected. Fed.R.Civ.Pro. 23(a)(4). The plaintiff's attorney must be "qualified, experienced and generally able to conduct the proposed litigation." *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir.1968). Additionally, the class representative must not have "interests antagonistic to those of the remainder of the class." *Id.* The purpose of this inquiry is to discover any conflicts of interest between the class representative and the class as well as any conflicts or incompetency on the part of class counsel. *Amchem Products Inc. v. Windsor,* — U.S. —, —, — n. 20, 117 S.Ct. 2231, 2250, 2251 n. 20, 138 L.Ed.2d 689 (1997).

Defendants challenge the adequacy of plaintiff and his counsel as representatives of the class. First, defendants argue that plaintiff lacks the requisite knowledge of and involvement in his claim to adequately represent the class. Second, defendants argue that plaintiff cannot adequately represent the proposed class because he is unwilling to finance the lawsuit. Finally, defendants argue that plaintiff's counsel lacks the qualifications necessary to serve as counsel to the proposed class.

■ Defendants argue that plaintiff lacks familiarity and involvement in the action necessary for its vigorous prosecution. Review of plaintiff's deposition testimony, however, reveals that plaintiff understands the allegations in the complaint and that he has reviewed the legal documents submitted by his lawyers. Plaintiff is interested in pursuing this case and pursuing it as a case action in order to vindicate the rights of everyone who has been sent the letter. Plaintiff understands what a class action is and that he is responsible to the class and must appear at depositions and trial and "do whatever is necessary."

■ Class certification may be denied " 'where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.' " *Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1077 (2d Cir.1995) (quoting *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 727 (11th Cir. 1987)). Nevertheless, this case is distinguishable from the case defendants offer in support of their argument that plaintiff is inadequately informed or involved. *See In re Goldchip Funding Co.,* 61 F.R.D. 592, 594 (M.D.Pa.1974).[6] In *Goldchip,* the court found that the proposed class representatives were inadequate because not only were they unknowledgeable and inexperienced, but they had not shown a "keen interest in the progress and outcome of their litigation" as evidenced by their failure to attend any of the hearings in the case. *Id.* Such complete lack of involvement has not occurred here, despite

---

**6.** I also note that another court in Pennsylvania has remarked on the disfavor in which *Goldchip* is held, see *Peil v. National Semiconductor Corp.,* 86 F.R.D. 357, 366 (E.D.Pa.1980).

defendants' contentions that plaintiff should have more actively investigated counsel and the facts alleged in the complaint that were beyond his personal knowledge.

More troubling to this Court, however, is that plaintiff states at one point in his deposition that he will receive $1,000 if the case is successful but later says that any recovery in the case will go to cover costs or to the class and that he will get "a little bit." One question in this Court's mind is whether plaintiff has the ability to control class counsel, Edelman & Combs. Edelman & Combs states in its briefs that plaintiff is an articulate and intelligent individual. Yet it appears that plaintiff's counsel may have given plaintiff a false impression of the relative merits of an individual action versus a class action. Thus, it appears that counsel for plaintiff has not adequately explained the merits of pursuing this case as a class action as opposed to an individual action. Plaintiff's intelligence and ability to communicate alone does not establish his adequacy where it appears that counsel may not be giving him the complete information he needs to make informed decisions in this case. In light of the above, this Court agrees with defendants that the real decision-maker here is Edelman & Combs.

In addition to questions about whether plaintiff has adequate control over his attorneys, this Court now has questions about whether plaintiff will be able to adequately represent the interests of the class. These concerns do not involve plaintiff's personal characteristics. Instead, they involve the untenable position in which plaintiff's attorneys have placed him in with regards to his fee arrangement with them. At his deposition, plaintiff asserted that he was not responsible for the costs of the proposed class action.[7]

Before certifying a class, courts often examine whether the litigation can be funded during the pendency of the case. *Eisen*, 417 U.S. at 178–79, 94 S.Ct. 2140. Two decades ago, courts asked whether the named plaintiffs were willing to pay all costs related to the class action. *National Auto Brokers Corp. v. General Motors Corp.*, 376 F.Supp. 620, 636–38 (S.D.N.Y.1974); *Apanewicz v. General Motors Corp.*, 80 F.R.D. 672, 679 (E.D.Pa.1978); *Tomkin v. Kaysen*, 69 F.R.D. 541, 543–44 (S.D.N.Y.1976); *Held v. Missouri Pac.R.R. Co.*, 64 F.R.D. 346, 350 (S.D.Tex.1974); *Ralston v. Volkswagenwerk A.G.*, 61 F.R.D. 427, 433–34 (W.D.Mo.1973). This concern is still echoed in some more contemporary cases. *Mechigian v. Art Capital Corp.*, 612 F.Supp. 1421 (S.D.N.Y.1985) ("plaintiff has not provided adequate support for his claim that he is financially capable to function as a class representative").

Placing the financial burden on the named plaintiffs prevented the class action from faltering due to lack of funds before the class members could assist in paying the costs of litigation. *Ralston*, 61 F.R.D. at 434. Pre-certification inquiry into the named plaintiffs' finances also prevented the class action from being settled unfavorably due simply to lack of funds to continue the litigation. *Held*, 64 F.R.D. at 350.

More recently, however, courts have approved alternative methods of ensuring adequate funds for the class action. In particular, courts have been satisfied if plaintiff's counsel agrees to advance all necessary costs and if the class representative agrees to pay a pro rata share of costs should the suit be unsuccessful. *Rand v. Monsanto Co.*, 926 F.2d 596 (7th Cir.1991) (holding that plaintiff need not be willing to bear all costs); *Lopez v. Orlor Inc.*, 176 F.R.D. 35 (D.Conn.1997) (finding plaintiff's willingness to pay pro rata share of expenses sufficient); *Harrison v. Great Springwaters of Am. Inc.*, 1997 WL 469996, at *8 (E.D.N.Y. June 18, 1997)

7. Q: Mr. Weber, do you have an understanding or an impression of what your financial obligations would be as a class representative?

A: Yes.
Q: What is your understanding?
A: My understanding is all the fees and everything will be picked up by the law firm.

Q: To this point in the lawsuit have you paid anything out of your pocket towards the cost of this lawsuit?
A: No.
Q: Have you been told by anyone that your were responsible for the cost and expenses of the class lawsuit should it go forward?
A: No.
(Tr. of Weber's Depos.)

(named plaintiff only required to pay for pro rata share of costs); *Sandlin v. Shapiro & Fishman,* 1997 WL 155418, at *6 (M.D.Fla. Mar.18, 1997) (named plaintiff not responsible for more than pro rata share of litigation expenses); *Rivera v. Fair Chevrolet Geo Partnership,* 165 F.R.D. 361, 365 (D.Conn. 1996) (finding plaintiff need only show willingness to pay pro rata share of expenses); *In re Southeast Hotel Properties Limited Partnership Investor Litig.,* 151 F.R.D. 597, 608 (W.D.N.C.1993) (finding plaintiff adequate where she expressed knowledge that responsible to pay "some costs" advanced by counsel); *South Carolina Nat'l Bank v. Stone,* 139 F.R.D. 325 (D.S.C.1991) (holding named plaintiff's "willingness, or lack thereof, to advance the full costs of the litigation or of class notice is irrelevant."); *see also Van–S–Aviation v. Piper Aircraft Corp.,* 101 F.R.D. 759 (W.D.Mo.1984) (class certification denied because neither plaintiff nor counsel expressed willingness to pay costs of litigation).

A few courts have allowed counsel not only to advance costs but to do so with the expectation that counsel will cover the costs even if the suit is unsuccessful. See *Walco Inv. v. Thenen,* 168 F.R.D. 315, 328 (S.D.Fla.1996) (holding costs may be advanced by counsel); *Margolis v. Caterpillar Inc.,* 815 F.Supp. 1150, 1154 (C.D.Ill.1991) (finding attorney can agree to cover costs if suit is unsuccessful). In doing so, these courts explicitly relied on the ABA Model Rule 1.8 or the local equivalent, which allows a lawyer to pick up the tab for costs if the suit is unsuccessful.

Under Disciplinary Rule 5–103(B) of the New York State Lawyer's Code of Professional Responsibility, however, lawyers may advance the costs of litigation to a client provided that the client remains "ultimately liable." 22 N.Y.C.R.R. § 1200.22. New York's Disciplinary Rule 5–103(B) is identical to the Disciplinary Rule 5–103(B) of the ABA's Model Code of Professional Responsibility. In an attempt to update the ethics

rules, the ABA developed the Model Rule of Professional Conduct 1.8(e) which permits a lawyer to advance costs "the repayment of which may be contingent on the outcome of the matter." However, this Court applies the New York State Lawyer's Code of Professional Responsibility as it is interpreted by the courts of the circuit.[8] *See* Local Civil Rule 1.5(b)(5).

A few courts, including the Seventh Circuit, question the applicability of the local equivalents of New York's Disciplinary Rule 5–103(B) to class actions. *Rand,* 926 F.2d at 599–601; *County of Suffolk v. Long Island Lighting Co.,* 710 F.Supp. 1407, 1413–14 (E.D.N.Y.1989). The Seventh Circuit has held that interpreting Disciplinary Rule 5–103(B) to require the class representative to bear ultimate responsibility for all of the costs of the litigation would be inconsistent with Federal Rule of Civil Procedure 23 and, thus, inappropriate. *Rand,* 926 F.2d at 600. The Seventh Circuit also commented that the disciplinary rule served no good purpose and should not be applied to class actions. *Id.* However, the Seventh Circuit also noted: "All we have held is that a district court may not establish a per se rule that the representative plaintiff must be willing to bear all (as opposed to a pro rata share) of the costs of the action." *Id.* at 601.

In this Circuit, Judge Weinstein has criticized New York's Disciplinary Rule 5–103(B) and has argued that it should not be applied in the Eastern District of New York. *See County of Suffolk,* 710 F.Supp. at 1413–15. Judge Weinstein was concerned about the named plaintiffs in an unsuccessful class action having to pay all of the costs and expenses associated with the suit. *See id.* Judge Weinstein argued that such a requirement would pose undue hardships on the named plaintiffs and would frustrate the purposes behind Rule 23 of the Federal Rules of Civil Procedure. *See id.*

---

**8.** Local Civil Rule 1.5(b)(5) permits an attorney to be disciplined in the Eastern District of New York if, "[i]n connection with activities in this court, any attorney is found to have engaged in conduct violative of the New York State Lawyer's Code of Professional Responsibility as adopted from time to time by the Appellate Divisions of the State of New York, and as interpreted and applied by the United States Supreme Court, the United States Court of Appeals for the Second Circuit, and this court."

*County of Suffolk* was decided two years before federal courts began adopting a compromise position wherein named plaintiffs are ultimately responsible only for a pro rata share of the costs and expenses. *See In re Bank of Boston Corp. Securities Litig.*, 762 F.Supp. at 1535; *Walco Inv.*, 168 F.R.D. at 328; *Rivera*, 165 F.R.D. at 365; *In re Southeast Hotel Properties Limited Partnership Investor Litig.*, 151 F.R.D. at 608; *Lopez*, 176 F.R.D. 35, 38; *Harrison*, 1997 WL 469996, at *8; *Sandlin*, 1997 WL 155418, at *6. In any event, in Judge Weinstein's case, the named plaintiffs had expressed their willingness to be responsible for all of the costs and expenses arising from their lawsuit. *See County of Suffolk*, 710 F.Supp. at 1413. Accordingly, Judge Weinstein was not faced with the question of whether a pro rata share fee arrangement is permissible. Since that case, this compromise has been applied by Judge Glasser of this Court. See *Harrison v. Great Springwaters of Am. Inc.*, 1997 WL 469996, at *8 (E.D.N.Y. June 18, 1997) (named plaintiff only required to pay for pro rata share of costs).

In this case, it is possible for plaintiff to comply with New York's Disciplinary Rule 5–103(B) by accepting ultimate responsibility for his pro rata share of the costs and expenses of this suit. Given the large class size in this case, compliance with New York's Disciplinary Rule 5–103(B) does not pose hardships for plaintiff and would not frustrate the purposes behind Rule 23. Accordingly, plaintiff's counsel must comply with Disciplinary Rule 5–103(B).

Counsel has not done so. Instead, Edelman & Combs argues that its fee arrangement is ethical even though plaintiff is not ultimately responsible for even a pro rata share of the costs and expenses of this lawsuit. Edelman & Combs argues that this is a matter of federal law. Yet, the cases they offer for the proposition that plaintiff need not be at all responsible for the costs and expenses of a class action occur in other districts where the local equivalent of Rule 5–103(B) does not apply. *See South Car-*

*olina National Bank v. Stone*, 139 F.R.D. 325, 329 (D.S.C.1991); *Margolis v. Caterpillar, Inc.*, 815 F.Supp. 1150, 1150 (C.D.Ill. 1991).

Equally puzzling is Edelman & Combs' argument that plaintiff can easily comply with New York's Disciplinary Rule 5–103(B) by bearing his pro rata share of the costs and expenses of this lawsuit and, thus, should not have to comply with the disciplinary rule. Edelman & Combs estimates that plaintiff's pro rata share of the costs and expenses of this lawsuit would be less than a dollar. Edelman & Combs suggests that, as a result, requiring plaintiff to bear responsibility for a pro rata share is "more trouble than it is worth." (Pl.'s Reply Brief at 11.)[9] This Court views with disfavor the cavalier attitude that Edelman & Combs gives an ethical rule of the state in which it has brought suit. While other districts and circuits in other states have adopted the more liberal rule described in the ABA Model Rules, including the Seventh Circuit and the Northern District of Illinois, I remind Edelman & Combs that it has brought suit in the Eastern District of New York, which still follows New York Disciplinary Rule 5–103.

In sum, Edelman & Combs refuses to comply with the ethical rules that apply to this Court. Edelman & Combs insists on using the same fee arrangement that it uses in its Illinois practice—advancing the costs and expenses of litigation with its repayment contingent on the successful conclusion of the case. Since Illinois has adopted the ABA's Model Rule of Professional Conduct 1.8(e), Edelman & Combs' typical fee arrangement is ethical in Illinois. Because its fee arrangement is considered inappropriate in New York, Edelman & Combs is not an adequate plaintiff's counsel, and class certification must be denied on that ground.

For all these reasons, this Court finds that plaintiff and plaintiff's counsel, Edelman & Combs, are not adequate class representatives. Accordingly, plaintiff's motion for class certification is denied.

---

**9.** In fact, plaintiff already has expanded more than that in time and effort in pursuing the lawsuit, taking time off from work for his deposition on two occasions. (Pl.'s Reply Brief at 8.)

The docket clerk is directed to furnish a copy of the within to all parties and to the magistrate judge.

SO ORDERED.