**Morris WILNER, Plaintiff,**

v.

**OSI COLLECTION SERVICES, INC., Defendant.**

**No. 00 CIV. 1057(CM).**

United States District Court, S.D. New York.

June 26, 2001.

Adam J. Fishbein, Uniondale, NY, Cathleen M. Combs, Anne M. Burton, Daniel A. Edelman, Edelman, Combs & Latturner, Chicago, IL, for Plaintiff.

Joseph M. O'Connor, Ahmuty, Demers & McManus, Albertson, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION

McMAHON, District Judge.

On January 3, 2001, I ordered that judgment be entered against defendant OSI, and that plaintiff Wilner be awarded $1,000. In addition, I dismissed plaintiff's complaint for lack of subject matter jurisdiction (in that defendant, pursuant to Fed.R.Civ.P. 68, had offered plaintiff the full amount—$1,000— that plaintiff could hope to recover in this action), and I retained jurisdiction to set the amount of attorneys' fees to be awarded to plaintiffs' counsel. *Wilner v. OSI Collection Services, Inc.,* 198 F.R.D. 393, 397 (S.D.N.Y. Jan.3, 2001). Counsel have moved for attorneys' fees in the amount of $12,814.59, con-sisting of an award of $8,419.59 to the firm of Edelman, Combs & Latturner, an out-of-state firm, and $2,095.00 for Adam J. Fishbein, Esq., who appeared as local counsel. In addition, Mr. Fishbein has moved, by letter, for reconsideration of the Court's order and decision dismissing the plaintiff's case and denying the motion for class certification. *Id.* at 397. I will first address the motion for reconsideration.

1. *The Motion For Reconsideration Of The Order Dismissing Wilner's Claim As Moot Is Granted*

Plaintiff moves for reconsideration of the previous order dismissing this case as moot, on the grounds that defendant's offer of judgment—"$3,000, inclusive of attorney's fees and costs"—was not all that plaintiff could have received under the statute.

By way of background, plaintiff alleges that he received a debt collection letter from defendant OSI that violates the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* The FDCPA limits the liability of a debt collector to "any actual damages sustained" by the claimant due to the debt collector's violation of the Act, "such additional damages as the court may allow, but not exceeding $1,000," and "costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. §§ 1692k(a)(1), (2), (3). As Wilner has not alleged that he suffered any actual damages, his recovery is thus limited to the statutory damages.

On October 27, 2000 (subsequent to plaintiff's motion for class certification), defendant served on Wilner a Rule 68 offer of judgment in the amount of $3,000, inclusive of all legal fees, disbursements and costs. Fed.R.Civ.P. 68. Rule 68 provides that:

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specific in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is

accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs.

*Id.* Courts have held, based on the language of this rule, that when defendant offers "all that [a plaintiff can] hope to recover through [the] litigation, 'there is no justification for taking the time of the court and the defendant in the pursuit of [a] minuscule individual claim[ ] which defendant has . . . satisfied.' " *Ambalu v. Rosenblatt,* 194 F.R.D. 451, (E.D.N.Y.2000) (requiring plaintiff to accept offer of judgment and dismissing plaintiff's Fair Debt Act claim) (quoting *Abrams v. Interco Inc.,* 719 F.2d 23, 32 (2d Cir.1983)); *see also Murphy v. Equifax Check Servs., Inc.,* 35 F.Supp.2d 200, 203 (D.Conn.1999) (dismissing plaintiff's Fair Debt Act claim because defendant "agreed to give the plaintiff full relief.").

Following the reasoning of *Ambalu v. Rosenblatt,* 194 F.R.D. 451, 452 (E.D.N.Y.2000), I held that Wilner's claim was moot, as he no longer had a "legally cognizable interest" in the outcome. *Id.* at 452. Plaintiff argues, however, that his failure to accept the $3,000 offer of judgment did not render his claim moot because the Fair Debt Act allows for statutory damages of $1,000 and "reasonable" attorney's fees and costs, which even at the time the offer of judgment was made could have exceeded, and in fact did exceed, $2,000.[1]

Indeed, in *Ambalu,* defendant's offer of judgment was for "$1,000, the costs of the action, and a reasonable attorney's fee incurred up through the date of the offer as determined by the court." The language of that offer mirrored the statute in a way that defendant OSI's offer does not. By setting a cap on the total amount awarded, OSI clearly did not offer more than plaintiff could have received under the statute, with respect to the costs and attorney's fees.

The question though, is whether plaintiff has a "legally cognizable interest" in that portion of the award beyond $1,000. In other words, does plaintiff's interest in the suit end with the $1,000 in statutory damages, or do the costs and attorneys' fees also "belong" to the plaintiff. I must conclude that, at least with respect to this statute, they do.

In *Teng v. Metropolitan Retail Recovery,* 851 F.Supp. 61, 70 (E.D.N.Y.1994), Judge Spatt concluded that § 1692k(a)(3) mandated the recovery of "the costs of the action; together with a reasonable attorney's fee as determined by the court," by a prevailing plaintiff as a means of fulfilling the intent of Congress that the act should be enforced by debtors acting as private attorneys general. The Court also noted that several other courts had required an award of attorney's fees even where violations were so minimal that statutory damages were not warranted. *Id.* The Court concluded that given the structure of the section, attorney's fees should not be construed as a special or discretionary remedy. *Id.* at 71. *See also Pipiles v. Credit Bureau of Lockport,* 886 F.2d 22, 25 (2d Cir.1989) (mandating recovery of costs and attorney's fees by a prevailing plaintiff); *Graziano v. Harrison,* 950 F.2d 107 (3d Cir. 1991) (remanding for determination of attorney's fees where District Court had denied an award because plaintiff had shown only a minimal violation of the FDCPA); *Carroll v. Wolpoff & Abramson,* 53 F.3d 626 (4th Cir. 1995); *Tolentino v. Friedman,* 46 F.3d 645 (7th Cir.1995); *Booth v. Collection Experts, Inc.,* 969 F.Supp. 1161 (E.D.Wis.1997); *Jackson v. Peisner,* 1994 U.S. Dist. LEXIS 14101 (E.D.Mich.1994).

Because the availability of attorney's fees and costs is so integral to the statute on which plaintiff brings suit, I hold on reconsideration that defendant's offer of judgment did not constitute more than Wilner could have received under the statute. Wilner's claim is thus not moot.

In light of my holding that plaintiff may now proceed with his claim, I need not determine the amount of attorneys' fees. I agree

---

1. In their objection to plaintiff counsel's calculation of fees, even defendants propose a number higher than $2,000, albeit not much higher. Indeed, while I would significantly reduce plaintiff's proposed figure, I would set an amount greater than $2,000.

with defendants, however, that the figure proposed by plaintiff's counsel, Mr. Fishbein, is not justifiable. As I noted in my January 3, 2001 opinion, this is a routine filing under the Fair Debt Collection Practices Act, the provisions of which must be, by now, quite familiar to both Mr. Fishbein and his co-counsel, the firm of Edelman and Combs. Counsel's efforts could not have resulted in the more than $12,000 in fees that plaintiff proposes should go to three different sets of attorneys.

On this issue, it has recently come to my attention that last year, Judge Gleeson of the Eastern District questioned Adam Fishbein in open court whether his proposed fees reflected his use of "boilerplate" language in a motion for summary judgment on his client's FDCPA claim. *Laster v. Cole*, No. 99–CV–2837, 2000 WL 863463 (E.D.N.Y. June 23, 2000). After first arguing that he had spent nine hours preparing the summary judgment motion in that case, Fishbein later admitted that he worked on the motion for only six hours, and that he added three additional hours to reflect the amount of time he would have spent if he had drafted the motion from scratch. Judge Gleeson found that Fishbein was in essence seeking a multiplyer for his accumulated expertise in this type of case. He found that, "rather than file an honest affirmation of services and ask for the multiplier, [Fishbein] inflated his billable hours and filed a perjurious affirmation." *Id.* The Court ordered Fishbein to show cause why he should not be ordered to pay $600—the amount by which he inflated his fee in the case—to the Clerk of the Court as a sanction for filing the false affirmation.

Judge Gleeson decided not to impose the sanction, based on the following submission from Mr. Fishbein:

It was with a great sense of embarrassment and shame that I left oral argument concerning plaintiff's fee application and upon receipt and publication of the decision. That decision has already accomplished what I think is an important goal in that I promise to make accurate representations of time in future matters before any Court.... I realize, as Your Honor pointed out, that I failed to indicate to the Court exactly the breakdown of the hours for time actually spent. I now know to set forth the hours spent on a matter and then make a separate application for a multiplier based upon the results achieved in the matter being that I may have devoted my time in an efficient fashion by incorporating previous work product.

. . . .

I feel that the Court's recent decision without the imposition of sanctions has given me pause to become more careful in practice so that I shall be able to continue and prevail in these matters. As a fairly young practitioner, I believe that whatever is the Court's objective, its order to show cause has been accomplished without the actual imposition of the sanctions in that I have had the opportunity to devote this time to attempt to better explain myself to the Court.

I respectfully request that the Court take the foregoing into consideration, and in a non-pedestrian fashion, wish to express my regret that the Court has had to devote its time to the within issue.

*Laster v. Cole*, No. 99–CV–2837, 2000 WL 1091163 at *1 (E.D.N.Y. July 27, 2000).

It does not appear that Mr. Fishbein has learned his lesson. Should plaintiff prevail, counsel would be well-advised to review his time sheets before resubmitting them to the court.

2. *The Motion To Reconsider The Denial Of Class Certification Is Granted*

In my original decision, I declined to decide whether the usual rule that the mootness of the named plaintiff's claim rendered the class action moot, or whether these circumstances created an exception to that rule, because, on the record before me, plaintiff had not satisfied the prerequisites for class certification. *Id.* at 396. In particular, I held that plaintiff had failed to offer anything more than speculation on the issue of numerosity. *Id.*

Plaintiff moves for reconsideration on the ground that defendant's belatedly-filed responses to Wilner's interrogatories (which were apparently transmitted to the Court via

letter, rather than by a supplemental brief in support of the motion) demonstrated that some 14,120 letters in substantially the form of the letter sent to Wilner had been transmitted by OSI. OSI indicated that at least some of those letters would fall outside the relevant statute of limitations, but it offered no estimate of how many. Nonetheless, even assuming that actions relating to 50% of those letters were time-barred, the number more than satisfied the numerosity requirement. *See* Fed.R.Civ.P. 23; *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.), *cert. denied*, 515 U.S. 1122, 115 S.Ct. 2277, 132 L.Ed.2d 281 (1995) (recognizing that "numerosity" is presumed at a level of forty members). Thus, I will revisit the class certification motion.

In addition to numerosity of parties, Rule 23 provides that [o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a); *Savino v. Computer Credit Inc.*, 164 F.3d 81, 86–87 (2d Cir.1998) (applying Rule 23 to FDCPA claims); *Macarz v. Transworld Systems, Inc.*, 193 F.R.D. 46 (D.Conn.2000) (same). Additionally, plaintiff must satisfy one of the three criteria set forth in Rule 23(b). *Comer v. Cisneros*, 37 F.3d 775, 796 (2d Cir.1994).

Like other courts in this circuit which have considered the applicability of the class action to lawsuits brought under the FDCPA, I have no trouble concluding that the commonality and typicality requirements are met. The primary question of law and fact in this case is whether the notices sent to the proposed class, which are the same as or similar to the notice sent to Wilner, violate the statute. *See, e.g., Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 352 (E.D.N.Y.1997); *Macarz*, 193 F.R.D. at 49; *D'Alauro v. G.C. Services Ltd. Partnership*, 168 F.R.D. 451, 456 (E.D.N.Y.1996). For the same reason— Wilner's claim is typical of those in the class. *See In re Drexel Burnham Lambert Corp., Inc.*, 960 F.2d 285, 291 (2d Cir.1992) (finding requirement satisfied when each class members' claim arises from the same course of events and each class member makes same legal arguments to prove the defendant's liability); *Savino*, 173 F.R.D. at 352–53.

However, there is not enough evidence in the record from which I can decide the question of Wilner's adequacy as a class representative. Thus, even though I grant the motion for reconsideration, I cannot certify a claim at this time.

Adequacy of representation is measured by two standards: (1) class counsel must be qualified, experienced and generally able to conduct the litigation, *see In re Joint Eastern & Southern Dist. Asbestos Litigation*, 78 F.3d 764, 778 (2d Cir.1996), and (2) the class members must not have interests that are antagonistic to one another, *see Drexel*, 960 F.2d at 291.

My concerns are the same as those of other courts in the Second Circuit which have refused to certify similar proposed classes: plaintiff's understanding of and involvement in his claims, and the fee arrangement between the named plaintiff and his counsel. *See Berrios v. Sprint Corp.*, No CV–97–0081, 1998 WL 199842 at *14–*17 (E.D.N.Y. March 16, 1998); *Weber v. Goodman*, 9 F.Supp.2d 163, (E.D.N.Y.1998).

The courts in *Berrios* and *Weber* were both concerned about the extent to which plaintiff was able to "control" class counsel. In particular, there was evidence that plaintiffs did not adequately understand the merits of pursuing the case as a class action, and that plaintiffs' counsel may have given plaintiff a false impression of the relative merits of pursuing an individual action (in which plaintiffs could recover up to $1,000 in statutory damages) versus joining as a class (for which plaintiffs might only receive a few dollars). *Berrios*, 1998 WL 199842 at *14; *Weber*, 9 F.Supp.2d at 172. Plaintiff has the burden of showing that Wilner is sufficiently involved in the case and has an adequate understanding of both his role in the case and the extent to which his recovery could be diminished if he pursues it as a class action.

My second concern is that plaintiff's fee arrangement with his counsel does not vio-

late the ethical rules of this jurisdiction. Before certifying a class, courts often examine whether the litigation can be funded during the pendency of the case. *Berrios,* at *15, (citing *Eisen,* 417 U.S. at 178–79, 94 S.Ct. 2140). Recently, courts have accepted a funding mechanism whereby plaintiff's counsel agrees to pay all necessary costs, and the class representative agrees to pay a pro rata share of the costs should the suit be unsuccessful. *Berrios,* at *15 (citing cases); *Harrison v. Great Springwaters of Am. Inc.,* 1997 WL 469996, at *8 (E.D.N.Y. June 18, 1997). As the court in *Berrios* explains:

> Under Disciplinary Rule 5–103(b) of the New York State Lawyer's Code of Professional Responsibility, lawyers may advance the costs of litigation to a client provided that the client remains "ultimately liable." 22 N.Y.C.R.R. § 1200.22. New York's Rule 5–103(b) is identical to the Disciplinary Rule 5–103(b) of the ABA's Model Code of Professional Responsibility. In an attempt to update the ethics rules, the ABA developed the Model Rules including Rule 1.8(e) which permits a lawyer to advance costs even though the client is not ultimately liable for the sums if the lawsuit fails. However, this Court applies the New York State Lawyer's Code of Professional Responsibility as it is interpreted by the courts of the circuit. *See* Local Civil Rule 1.5(b)(5).

*Berrios,* 1998 WL 199842 at *16. The court in *Berrios* held that "it is possible for plaintiff to comply with federal class action case law and New York's disciplinary Rule 5–103(b) by accepting ultimate responsibility for her pro rata share of the costs and expenses of this suit." *Id.* at *17. *See also Weber,* 9 F.Supp.2d at 174 ("[T]he cases [plaintiff's counsel] offer for the proposition that plaintiff need not be at all responsible for the costs and expenses of a class action occur in other districts where the local equivalent of Rule 5–103(b) does not apply.") Because the fee arrangement between plaintiff and his counsel-did not require plaintiff to bear this responsibility, class certification was denied. *Berrios,* 1998 WL 199842 at *17; *Weber,* 9 F.Supp.2d at 174.

This matter will be set for hearing on the issues delineated above.

This constitutes the order and decision of the Court.